IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEC 98C-5 LLC, | |
| Plaintiff, | |
| v. | |
| SAKS INCORPORATED, | |
| Defendant. | |

## VERIFIED COMPLAINT

Plaintiff WEC 98C-5 LLC ("Plaintiff" or "Landlord"), by its attorneys, for its verified complaint against defendant Saks Incorporated ("Defendant" or "Saks"), alleges as follows.

## NATURE OF ACTION

1. This action arises from Saks' stubborn refusal to honor its obligations under a corporate guaranty (the "Guaranty") in which it promised to absolutely and unconditionally guarantee the payment of rent by CPS Department Stores, Inc. ("Carson" or "Tenant")[1] and perform Tenant's other obligations with respect to leasehold premises located at 300 Lincoln Mall Drive, Matteson, Illinois 60443 (the "Property").

2. The building on the Property formerly constituted a portion of Lincoln Mall in Matteson, Illinois ("Lincoln Mall" or the "Mall"). In 2013, the Village of Matteson (the "Village") filed the action styled *Village of Matteson v. Michael Kohan et al*, 13 M6 2833 (Cook Cnty., Ill.) to address significant life-safety issues at the Mall. The court appointed a receiver, and in 2017, ordered the receiver to demolish Lincoln Mall because the safety hazards could not be remediated

---

[1] Reference herein to Carson or Tenant includes all successors and assignees of CPS Department Stores, Inc., including McRIL, LLC.

27463533.2

and the Mall constituted a public nuisance. Despite assuring the receiver that Tenant would continue operating a department store on the Property, on March 4, 2018, Carson's abruptly shuttered its doors and stopped paying Landlord rent. Landlord immediately notified Saks of Carson's default and demanded payment under the Guaranty. Saks denied any obligation under the Guaranty, asserting Tenant was constructively evicted from the Property in March 2018, contradicting Tenant's representations to the receiver and its other activities at the Mall since 2015.

3.     Landlord seeks the damages it has sustained as a result of Saks' breach of the Guaranty, including (1) basic rent, additional rent and other amounts due as of the date of termination; (2) the net present value (using a rate of 7.16%) of basic rent from the date of termination through January 31, 2024; (3) statutory prejudgment interest as of Plaintiff's April 23, 2018 demand on Saks under the Guaranty; (4) all damages, costs and expenses arising in consequence of Saks's default under the Guaranty, including the lost value of the Property; and (5) attorneys' fees and costs, in accordance with the terms of the Lease and the Guaranty. Further, Landlord seeks a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, that Saks is and shall remain liable for the payment of these amounts, in accordance with the Guaranty.

## THE PARTIES, JURISDICTION AND VENUE

4.     Plaintiff is a limited liability company registered to do business in the State of Illinois, with its principal place of business at 136 Main St, Pineville, North Carolina 28134. Plaintiff's sole member is Carson Matteson LLC, which, itself, has one sole member, Gvest Real Estate Capital LLC ("Gvest"). Gvest has two members, Raymond M. Gee, a resident of North Carolina, and RMG Management, Inc., a North Carolina corporation.

5.  Defendant Saks Incorporated is a corporation organized under the laws of the State of Tennessee and with its principal place of business located at 225 Liberty Street, New York, New York 10281.

6.  The Court has personal jurisdiction over Defendant because it made a contract or promise substantially connected with Illinois.

7.  Subject matter jurisdiction in this Court is founded upon diversity of citizenship. The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. In addition, there is complete diversity among the parties because Plaintiff is a citizen of North Carolina and Defendant is a citizen of New York and Tennessee. 28 U.S.C. § 1332(a).

8.  Venue is proper in this District pursuant to 28 U.S.C §1391(b) because a substantial part of the acts or omissions giving rise to the claim occurred in this District, or a substantial part of the property that is the subject of the action is situated in this District.

## FACTUAL BACKGROUND

**A. Saks' Predecessor Unconditionally Guarantees the Performance of Tenant's Obligations under the Lease, Including Payment of Rent.**

9.  Landlord is the prior owner of the Property, a commercial premises that formerly constituted a portion of Lincoln Mall in Matteson, Illinois.

10. On or about October 31, 1985, Landlord and Tenant entered into a lease for the Property (the "Lease"), a copy of which is attached hereto as Exhibit 1.

11. The Lease was amended on February 1, 1994 and August 5, 1998. Copies are attached, respectively, as Exhibit 2 and 3.

12. On or about August 5, 1998, Defendant's predecessor-in-interest, Proffitt's Inc., entered into a Guaranty of the Lease, guaranteeing the "full, faithful and prompt performance of

all the covenants, terms, conditions, and agreements" of the Tenant under the Lease. A copy of the Guaranty is attached hereto as Exhibit 4.

13. On September 17, 1998, Saks succeeded in interest as the guarantor under the Guaranty by the merger of Saks Holdings, Inc. and Proffitt's, Inc., with the surviving entity changing its name to Saks Incorporated.

### B. Tenant Operates a Department Store for Over Ten Years While Lincoln Mall is Partially Demolished and then Closed to the Public.

14. A Carson Pirie Scott department store operated at the Mall from 1985 through 2018. For the last decade Carson operated at the Mall, there were significant, ongoing life-safety issues at the Mall, which first arose in 2007 when former developer, Realty America Group (Lincoln Mall), LP, filed for bankruptcy and halted the demolition of the Mall midstream. In 2011, the Mall was acquired by a new owner at a tax sale, Lincoln Mall Holding LLC (the "Mall Owner").

15. In 2013, after the Mall Owner repeatedly failed to address outstanding building and fire code violations at the Mall, the Village of Matteson (the "Village") filed a lawsuit against the Mall Owner seeking remediation of the life-safety concerns posed by the continued operation of the Mall, or alternatively, requesting that the court order the Mall closed to the public. Tenant was served with a copy of the Village's complaint and motion for temporary restraining order, and had actual notice of the lawsuit.

16. Initially, in lieu of ordering the Mall closed, the court appointed a receiver to cause the Mall to conform to the Village's building and fire codes (the "Receiver"). The Receiver worked for over a year to attempt to remediate the conditions at the Mall, but ultimately, he advised the court that the dangerous conditions could not be fixed. Thus, the court ordered Lincoln Mall closed to the public as of January 7, 2015.

17. Throughout the receivership, the Receiver communicated with Tenant through Tenant's Senior Vice President of Real Estate, Paul Ruby, Assistant General Counsel, Nathanial Adams, and Director of Construction and Maintenance, Don Bruce. The Receiver negotiated directly with these Tenant representatives to ensure that the winding down of Mall operations would have minimal impact on Tenant's operations and the Property. After the Mall was closed in early 2015, Tenant, itself, installed new HVAC equipment such that the Property was no longer reliant on the central Mall HVAC equipment.

18. After the Mall was closed to the public, the Receiver undertook efforts to secure it from intruders; however, there were numerous break-ins after local media outlets publicized that the Mall was "abandoned." See http://wgntv.com/2016/11/22/photos-inside-the-abandoned-lincoln-mall-one-year-after-it-closed/ (last visited 1/25/17). Accordingly, even though the Mall was closed to the public, the Receiver reported to the court that it remained a public safety hazard and a nuisance.

19. On or about February 3, 2017, the Receiver and the Village jointly sought and obtained judicial approval to demolish the Mall pursuant to the Illinois Municipal Code, 65 ILCS 5/11-31-1(a).

20. Beginning December 2016, the Receiver communicated with Tenant about preparing the Property for the demolition of the Mall. In those communications, Tenant requested that either the Village or the Receiver reimburse Tenant for the cost to construct an exterior, weather-proof wall, sealing the building on the Property from the adjoining Mall. Tenant represented it was "accommodating" the Village's and Receiver's desire to demolish the Mall, and wanted to discuss how the Village could help Tenant maintain its store operations. Tenant further

represented it was not going to file for bankruptcy and intended to remain at the Property through the end of the Lease term in 2024.

21. Based on Tenant's representations, in September 2017, the Receiver undertook the construction of an exterior wall, spending approximately $250,000 of receivership funds to ensure the building on the Property was a self-contained structure that was not dependent on any of the former Mall systems or structure.

22. Demolition of the Mall began in September 2017, and completed in or around February 2018.

23. From the time the Mall was closed through the completion of demolition, Tenant continued to pay basic rent and never declared and/or notified Landlord of any default under the Lease.

**C. Saks Affirms Its Obligation to Pay Carson's Rent in the Event of Default to Induce Plaintiff To Purchase the Property.**

24. On or about April 7, 2017, as consideration to induce Plaintiff to purchase the Property, Saks duly executed and delivered to Plaintiff a Guarantor Estoppel Certificate (the "Estoppel Certificate"), confirming that the Guaranty remained in full force and effect. A copy of the Estoppel Certificate is attached hereto as Exhibit 5.

25. Absent the Guaranty, and Saks' reaffirmation of its obligations under the Guaranty, Plaintiff would not have purchased the Property.

**D. Carson Abruptly Closes the Property and Declares Bankruptcy.**

26. In January 2018, Carson's parent company, the Bon-Ton Stores, announced the planned closing of more than 40 stores across the country, including locations in Chicago and Schaumburg, and a clearance center in Aurora. *See* https://www.chicagotribune.com/suburbs/daily-

southtown/ct-sta-carsons-matteson-st-0306-20180305-story.html (last visited 6/3/20). The Property was not listed among the stores it was closing. *Id*.

27. On or about February 4, 2018, Tenant (McRIL, LLC) filed for protection under the United States Bankruptcy Code.

28. On or about March 2, 2018, Tenant notified Landlord that it had vacated the Property.

29. On March 4, 2018, after Bon-Ton initially indicated it would not close its Matteson store, Tenant abruptly changed course and shuttered the Property, posting a sign on the door that read: "Carson's Lincoln Mall Location Is Closed Today." [2] Tenant only notified its employees the previous night to report to the Property at 7:00 a.m., where it announced the store would permanently close.

30. Tenant defaulted in the payment of rent and additional rent, including, but not limited to the basic rent for February 2018, real estate taxes and personal property taxes.

31. On or about March 5, 2018, Tenant moved to reject the Lease under the United States Bankruptcy Code.

**E. Plaintiff Notifies Saks of Events of Default but Saks Refuses to Fulfill its Obligations under the Guaranty**

32. Upon surrender of the Property to Landlord, Landlord conducted an inspection of the building improvement on the Property, which revealed that Tenant failed to maintain the roof

---

[2] *See* https://abc7chicago.com/finance/carsons-location-in-matteson-abruptly-closes/3174163/ (last visited 6/3/20). Bon-Ton released a statement saying, "In January, we announced the closing of 42 stores to enable Bon-Ton to move forward with a more productive store footprint as part of its comprehensive turnaround plan. After further analysis, and with the assistance of our real estate team and financial advisors, we have made the difficult decision to close our Matteson store location, effective Sunday, March 4." *Id*.

7

27463533.2

structure of the building. Landlord specifically noted areas of the roof where metal decking was exposed to the elements and deteriorated to the point of being structurally unsound.

33. By notice dated April 23, 2018, Plaintiff notified Saks of Tenant's default in the payment of rent and its default due Tenant's filing for bankruptcy and failure to maintain the Property. A copy of this default notice is attached hereto as Exhibit 6.

34. Despite such demands, Saks failed and refused to pay the rent and other amounts due and owing under the Lease, and also refused to undertake the maintenance and repair of the roof of the building on the Property.

35. Under the Lease, as amended, neither termination of Tenant's possession nor the Landlord's repossession of the Property, relieves Tenant of its obligations under the Lease. *See* Exhibit 3, Section 2.27. Similarly, Saks remains obligated to perform all of Tenant's obligations under the Lease and must pay Landlord "all damages and all costs and expenses that may arise in consequence of any default" by Saks under the Guaranty, notwithstanding any termination of the lease, exercise or non-exercise of any right under the Lease or Guaranty, any lien or security interest on the Property, any bankruptcy of Carson or Saks, or any taking or recovering of the Property, among other things. Exhibit 4, pp. 2- 4.

36. Thus, in the event of Tenant's default, Saks is obligated to pay Landlord (1) basic rent, additional rent and other amounts due as of the date of Landlord's termination of the Lease or the date of the termination of Tenant's right to possession without terminating the Lease (the "date of termination"); (2) the net present value (using a rate of 7.16%) of basic rent from the date of termination through January 31, 2024; and (3) attorneys' fees and costs. *Id*. Further, Saks is obligated to pay Landlord all damages, costs and expenses that may arise in consequence of Saks's

default under the Guaranty, including, without limitation, attorneys' fees and costs. Exhibit 4, p. 2. Saks has refused to honor these obligations.

### F. Plaintiff Defaults on its Mortgage and the Village Takes Possession of the Property.

37. Rent due and payable under the Lease was co-terminus with the loan payments payable under a mortgage held by Wells Fargo Bank, National Association ("Lender") encumbering the Property.

38. Under the Lease, Tenant was instructed to remit rent payable under the Lease directly to Lender in payment of the loan payments, unless otherwise directed.

39. Tenant's and, by extension, Guarantor's failure to remit rent to Lender, in payment of the mortgage, resulted in Landlord's default thereunder.

40. Further, Tenant's failure to maintain the roof and Saks' refusal to undertake this obligation for Tenant rendered the Property unsafe and not marketable to other tenants. In other words, there was no fair rental value for the Property.

41. Indeed, in October 2018, the company that bought Bon-Ton's assets out of bankruptcy, GSC Generation ("GSC"), announced it would re-open Carson's stores in Evergreen Park, Illinois, and planned to open locations in Bloomingdale, Lombard and Orland Park, Illinois. *See* https://www.chicagotribune.com/business/ct-biz-carsons-reopening-evergreen-park-1031-story.html (last accessed 6/26/20). At no point did GSC express any interest in the Property, located in Matteson, Illinois.

42. Additionally, as a result of Tenant's and Saks's refusal to honor their obligations, Plaintiff was unable to pay the real estate taxes on the Property.

43. In the absence of any opportunity to relet the Property or another commercially reasonable option, and given its default under the mortgage and the significant real estate tax liability on the Property, Plaintiff, with permission from Lender, partnered with the Village to

9

demolish the building on the Property. Then, the Village foreclosed its demolition lien on the Property and took possession of the Property, which, under Illinois law, allowed the Village to abate the unpaid real estate taxes on the Property. Upon the transfer of the Property to the Village, Lender released its mortgage on the Property.

### G. Landlord Files Suit in Saks' Home State of New York but the Action is Dismissed in Favor of Illinois.

44. On May 8, 2018, Landlord filed a lawsuit against Saks in New York, where Saks is headquartered. *See WEC 98C-5, LLC v. Saks Incorporated*, Index No. 652246/2018 (N.Y. Sup. Ct.).

45. The New York court recognized the action sought to enforce "clear-cut guaranty payment obligations." March 8, 2019 Decision and Order, attached as Exhibit 7. Further, it noted "[t]he guaranties all specifically provide that they are not contingent on anything other than a default by the tenants in their rent payments." *Id*.

46. After the action was pending for several years, the court dismissed the case on the grounds of *forum non conveniens*, finding Illinois was the more convenient forum for this action.

## COUNT I – BREACH OF UNCONDITIONAL GUARANTY

47. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 46, as though fully set forth herein.

48. Saks duly executed and delivered to Plaintiff the Guaranty whereby it absolutely and unconditionally guaranteed payment of Tenant's obligations under the Lease and performance of its other obligations thereunder.

49. Defendant has failed to comply with the terms, covenants and conditions of the Guaranty by failing to make payment as required, despite demand therefore.

10

50. As a direct result of the foregoing, Defendant owes Plaintiff (1) basic rent, additional rent and other amounts due as of the date of termination; (2) the net present value (using a rate of 7.16%) of basic rent from the date of termination through January 31, 2024; (3) statutory prejudgment interest as of Plaintiff's April 23, 2018 demand on Saks under the Guaranty; (4) all damages, costs and expenses arising in consequence of Saks's default under the Guaranty, including the lost value of the Property; and (5) attorneys' fees and costs, in accordance with the terms of the Lease and the Guaranty.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment on Count I in its favor and against Defendant in the amounts set forth in Paragraph 50, above, and grant such other relief as the Court deems proper.

## COUNT 2 – DECLARATORY JUDGMENT

51. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 46, as though fully set forth herein.

52. An actual controversy exists between the parties with respect to their respective duties and obligations under the Guaranty.

53. The Court has the power to make binding declarations of the rights and duties of the parties and to adjudicate the dispute that has arisen between them. Plaintiff lawfully exercised its right to demand that Saks honor its obligations under the Guaranty. Saks violated the Guaranty by failing to honor its obligations thereunder.

54. Plaintiff is entitled to enforcement of the Guaranty against Saks, including, without limitation, the payment of (1) basic rent, additional rent and other amounts due as of the date of termination; (2) the net present value (using a rate of 7.16%) of basic rent from the date of termination through January 31, 2024; (3) statutory prejudgment interest as of Plaintiff's April 23, 2018 demand

on Saks under the Guaranty; (4) all damages, costs and expenses arising in consequence of Saks's default under the Guaranty, including the lost value of the Property; and (5) attorneys' fees and costs, in accordance with the terms of the Lease and the Guaranty.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment on Count II in its favor and against Defendant (a) declaring that the Guaranty remains in full force and effect, and that Saks is and remains obligated under the Guaranty to pay Plaintiff the amounts listed in Paragraph 54, above; (b) directing that all acts be taken to reflect such declaration; and (c) granting such other relief as the Court deems proper.

Dated: July 7, 2020                                         Respectfully submitted,

                                                           By:  *s/ Rachel L. Schaller*
                                                                One of its Attorneys

Rachel L. Schaller (ARDC No. 630 6921)
rschaller@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Dr., Suite 2800
Chicago, IL 60601

27463533.2

## VERIFICATION

I, Raymond M. Gee, verify pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing allegations are true and correct to the best of my knowledge and belief upon reasonable investigation.

Dated: 7-6-20

_____
Raymond M. Gee

27463533.2