# EXHIBIT 1

# EXHIBIT 1

Case. 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 3 of 64 PageID #:16

ГFF/10-29-85
0725R
Lincoln Mall

## LEASE

### by and between

CHICAGO TITLE & TRUST COMPANY, as trustee
under a Trust Agreement dated June 15, 1985
and known as Trust No. 1085200,

and

SIX ANCHORS LIMITED PARTNERSHIP,
a Maryland limited Partnership, as Landlord

and

CPS REALTY PARTNERSHIP, an Illinois general partnership,
as Tenant

Date:   October 31, 1985

DFF/10-29-85
0725R

# TABLE OF CONTENTS

| Section | | Page |
|---------|---|------|
| 1. | Lease of Demised Premises; Fixed Term . . . . . . | 1 |
| 2. | Certain Definitions . . . . . . . . . . . . . . . | 2 |
| 3. | Basic Rent and Percentage Rent . . . . . . . . . | 6 |
| 4. | Additional Rent . . . . . . . . . . . . . . . . . | 14 |
| 5. | No Counterclaim, Abatement, etc. . . . . . . . . . | 14 |
| 6. | Extension of Demised Term . . . . . . . . . . . . | 14 |
| 7. | Payment of Impositions, etc. . . . . . . . . . . . | 15 |
| 8. | Compliance with Legal and Insurance Requirements, Instruments, etc. . . . . . . . . . | 16 |
| 9. | Liens, etc. . . . . . . . . . . . . . . . . . . . | 16 |
| 10. | Permitted Contests . . . . . . . . . . . . . . . . | 17 |
| 11. | Use of Demised Premises, etc. . . . . . . . . . . | 18 |
| 12. | Utility Services . . . . . . . . . . . . . . . . . | 20 |
| 13. | Indemnification by Tenant . . . . . . . . . . . . | 20 |
| 14. | Maintenance and Repair, etc. . . . . . . . . . . . | 21 |
| 15. | Improvements, Alterations and Changes . . . . . . | 21 |
| 16. | Improvements; Tenant's Equipment . . . . . . . . . | 23 |
| 17. | No Claims Against Landlord, etc. . . . . . . . . . | 24 |
| 18. | Insurance . . . . . . . . . . . . . . . . . . . . | 24 |
| 19. | Damage, Destruction or Taking; Exchange . . . . . | 26 |
| 20. | Events of Default; Termination . . . . . . . . . . | 35 |
| 21. | Repossession, etc., by Landlord . . . . . . . . . | 37 |
| 22. | Reletting . . . . . . . . . . . . . . . . . . . . | 37 |

- i

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM          INDEX NO. 652246/2018

NYSCEF DOC. NO. 2     Case 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 5 of 64 PageID #:18     RECEIVED NYSCEF: 05/08/2018

DFF/10-29-85
0725R

| Section | | Page |
|---|---|---|
| 23. | [Deleted] . . . . . . . . . . . . . . . . . . . . | 37 |
| 24. | Survival of Tenant's Obligations; Damages. . . . . | 37 |
| 25. | Tenant's Waiver of Statutory Rights . . . . . . . | 39 |
| 26. | Assignment of Landlord's Interest . . . . . . . . | 39 |
| 27. | Surrender of Demised Premises, etc. . . . . . . . | 40 |
| 28. | No Merger of Title . . . . . . . . . . . . . . . . | 40 |
| 29. | Assignment and Subletting. . . . . . . . . . . . | 40 |
| 30. | Consents and Approvals . . . . . . . . . . . . . | 42 |
| 31. | Right of Landlord to Perform, etc. . . . . . . . . | 42 |
| 32. | Estoppel Certificate . . . . . . . . . . . . . . | 43 |
| 33. | No Waiver, etc., by Landlord . . . . . . . . . . | 43 |
| 34. | Right to Enjoin . . . . . . . . . . . . . . . . . | 43 |
| 35. | Remedies, etc., Cumulative . . . . . . . . . . . | 43 |
| 36. | Condition of Title and the Demised Premises. . . . | 44 |
| 37. | Exhibition . . . . . . . . . . . . . . . . . . . | 44 |
| 38. | Inspection . . . . . . . . . . . . . . . . . . . | 44 |
| 39. | Subordination, Attornment and Nondisturbance . . . | 44 |
| 40. | Tenant's Purchase Options. . . . . . . . . . . . | 45 |
| 41. | Liability of Beneficiary . . . . . . . . . . . . | 50 |
| 42. | Notices, etc. . . . . . . . . . . . . . . . . . . | 51 |
| 43. | Exculpation of Land Trustee. . . . . . . . . . . | 51 |
| 44. | Miscellaneous . . . . . . . . . . . . . . . . . | 51 |
| Exhibit A - Description of Land. . . . . . . . . . . . | | |
| Exhibit B - Rental Terms . . . . . . . . . . . . . . . | | |

DFF/10-29-85
0725R

**Section**                                                     **Page**

**Exhibit C** – Schedule of Leases . . . . . . . . . . . . . . .

**Exhibit D** – [Deleted]. . . . . . . . . . . . . . . . . . .

**Exhibit E** – Schedule of Lease Years. . . . . . . . . . . .

**Exhibit F** – Schedule of Instruments Constituting Operating
Agreement. . . . . . . . . . . . . . . . . . .

**Exhibit G** – [Deleted]. . . . . . . . . . . . . . . . . . .

**Exhibit H** – Schedule of Existing Mortgages . . . . . . . .

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM          INDEX NO. 652246/2018

NYSCEF DOC. NO. 2          Case 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 7 of 64 PageID #:20          RECEIVED NYSCEF: 05/08/2018

DFF/10-29-85
0725R

## LEASE

THIS LEASE, made October 31, 1985, between CHICAGO
TITLE & TRUST COMPANY, as trustee under a Trust Agreement dated
June 15, 1985 and known as Trust No. 1085200 (hereinafter
referred to as the "Land Trustee"), and SIX ANCHORS LIMITED
PARTNERSHIP, a Maryland limited partnership having an office
and place of business at Suite 650, 502 Washington Avenue,
Towson, Maryland 21204 (hereinafter referred to as the
"Beneficiary" and hereinafter collectively with the Land
Trustee referred to as "Landlord"), and CPS REALTY
PARTNERSHIP, an Illinois general partnership having its office
and principal place of business at One South Street, Chicago,
Illinois 60603 (hereinafter referred to as "Tenant"),

### W I T N E S S E T H:

1. _Lease of Demised Premises; Fixed Term_. Landlord,
for and in consideration of the covenants and conditions herein
contained, does hereby lease to Tenant and Tenant does hereby
hire and take from Landlord, upon and subject to the covenants
and conditions herein contained, the following property:

(a) the 11.84 $\pm$ acre parcel of land situate and
lying in Matteson, Illinois and more fully described in Exhibit
A attached hereto (the "Land");

(b) a department store building containing
163,950 $\pm$ square feet of gross floor area located on the Land
and all fixtures (excluding trade fixtures), machinery, and
equipment affixed thereto and constituting a part thereof,
including, without limitation, all furnaces, boilers, heaters,
electrical equipment, heating, plumbing, refrigerating,
ventilating, waste disposal, air-cooling and air-conditioning
apparatus and sprinkler systems (the "Improvements");

TOGETHER WITH all rights-of-way or uses, privi-
leges, franchises, servitudes, licenses, easements, tenements,
hereditaments and appurtenances now or hereafter belonging or
appertaining to any of the foregoing, including those with
respect to lands adjacent to the lands referred to in paragraph
(a) above (but in no case including such adjacent lands or
improvements or other property, whether real, personal or
mixed, thereon);

the Land, Improvements, and all such rights-of-way or use,
privileges, franchises, servitudes, licenses, easements,

DFF/10-29-85
0725R

tenements, hereditaments and appurtenances, being hereinafter
collectively referred to as the "Demised Premises" or "Lincoln
Mall";

SUBJECT, HOWEVER, to the Mortgage and the Permitted
Exceptions;

To Have and To Hold for a term commencing on the date
hereof and continuing through 11:59 p.m. on February 3, 2001
(herein referred to as the "Fixed Term"), and, at Tenant's
option as provided in section 6, for one or more extended
periods, unless this Lease is sooner terminated as hereinafter
provided (said term, including the extended portion or portions
thereof if so extended, or as shortened by any earlier termina-
tion of this Lease, being hereinafter referred to as the
"Demised Term").

2.   Certain Definitions.   As used in this Lease the
following terms have the following respective meanings unless
the context otherwise requires:

> Aggregate Basic Rent:  means the total of the Basic
> Rent under all of the Leases as shown on Exhibit B
> hereto and labelled as such.

> Aggregate Demised Premises:  as defined in section 3.

> Aggregate Maximum Rent:  means the maximum total Basic
> Rent and Percentage Rent as shown on Exhibit B hereto
> and labelled as such.

> Approved Independent Auditor:  means (a) an independent
> certified public accounting firm which, at the time in
> question, is considered to be a "Big Eight" accounting
> firm, or (b) such other independent public accounting
> firm as may be selected by the party charged with its
> employment and approved by the other party hereto.

> Basic Rent:  as defined in section 3.

> CPS:  means Carson Pirie Scott & Company, its
> permitted successors and assigns.

> Default:  any condition or event which constitutes an
> Event of Default or which, after notice or lapse of
> time or both, constitutes an Event of Default.

> Default Rate:  shall be a rate of interest equal to
> the lesser of:  (a) the maximum amount of interest
> permitted under applicable state law, or (b) the
> greater of (i) four percent (4%) in excess of the

- , -

DFF/10-29-85
0725R

yield, from time to time, as quoted daily in the Wall Street Journal (or if the same is not then published, another similar national journal selected by Landlord), of U.S. Treasury Bonds having an maturity closest to that date which is ten (10) years after the date of the Event of Default, or (ii) sixteen percent (16%) per annum.

Demised Premises:  as defined in section 1.

Demised Term:  as defined in section 1.

Event of Default:  as defined in section 20.

Exchange Property:  as defined in section 19.4.

Existing Mortgages:  means the mortgages, deeds of trust, financing statements and other security instruments encumbering all or any portion of the Demised Premises described on Exhibit H hereto.

Fixed Term:  as defined in section 1.

Gross Sales:  as defined in section 3.

Impositions:  all taxes, assessments (including, without limitation, all assessments for public improvements or benefits, whether or not commenced or completed prior to the date hereof and whether or not to be completed within the term hereof), water, sewer or other rents, rates and charges, excises, levies, license fees, permit fees, inspection fees and other authorization fees and other charges (other than any income, excess profits, franchise taxes or similar taxes of Landlord, unless and only to the extent that such tax is levied on Landlord in lieu of real estate taxes on the Demised Premises), in each case whether general or special, ordinary or extraordinary, or foreseen or unforeseen, of every character (including all penalties or interest thereon), which at any time before, during or in respect of the Demised Term hereof may be assessed, levied, confirmed or imposed on or in respect of or be a lien upon (a) the Demised Premises or any part thereof or any rent therefrom or any estate, right or interest therein, or (b) any occupancy, use or possession of the Demised Premises or any part thereof. Impositions shall also include all charges or assessments on account of or due under the Operating Agreement at any time before, during or in respect of the Demised Term.

- 3 -

DFF/10-29-85
0725R

Insurance Requirements: all terms and provisions of
any insurance policy covering or applicable to the
Demised Premises or any part thereof and all orders,
rules, regulations and other requirements of the
National Board of Fire Underwriters (or any other body
exercising similar functions) applicable to or affect-
ing the Demised Premises or any part thereof or any use
or condition of the Demised Premises or any part
thereof.

Lease Year: as defined in section 3.

Leases: (a) this Lease, (b) any leases for the
Exchange Property, and (c) those five (5) other leases
of even date herewith between Landlord and Tenant for
the premises listed on Exhibit C attached hereto, or
for any other property exchanged for such premises
pursuant to the terms of such leases.

Legal Requirements: all laws, statutes, codes, acts,
ordinances, orders, judgments, decrees, injunctions,
rules, regulations, permits, licenses, authorizations,
directions and requirements of all governments, depart-
ments, commissions, boards, courts, authorities,
agencies, officials and officers, foreseen or unfore-
seen, ordinary or extraordinary, which now or at any
time hereafter may be applicable to the Demised
Premises or any part thereof, or any of the adjoining
sidewalks, curbs, vaults and vault space, if any,
streets or ways, or any use or condition of the Demised
Premises or any part thereof, including without limi-
tation requirements regarding the removal or other
disposition of asbestos, lead-based paints or other
hazardous materials.

Maximum Rent: means the Maximum Rent allocable to the
Demised Premises as set forth on Exhibit B hereto and
labelled as such.

Mortgage: means only those mortgages or deeds of trust
created or assumed by Landlord and at any time encum-
bering the fee simple estate in any or all of the
Demised Premises, and any other security interest
created or assumed by Landlord therein and existing at
any time under any other form of security instrument
or arrangement used from time to time in the locality
of the Demised Premises (including, by way of example
rather than of limitation, any such other form of
security arrangement arising under any deed of trust,

- 4 -

DFF/10-29-85
0725R

sale-and-leaseback documents, lease-and-leaseback documents, security deed or conditional deed, or any financing statement, security agreement or other documentation used pursuant to the provisions of the Uniform Commercial Code or any successor or similar statute), provided that such mortgage, deed of trust or other form of security instrument, and an instrument evidencing any such other form of security arrangement, has been recorded among the Land Records or in such other place as is, under applicable law, required for such instrument to give constructive notice of the matters set forth therein.

Mortgagee: any holder of or beneficiary under a Mortgage.

Operating Agreement: the covenants, easements and restrictions affecting the Demised Premises and relating to the construction and operation of the retail shopping center of which the Demised Premises are a part, a schedule of which is attached hereto as Exhibit F, as such may be modified from time to time pursuant to Section 11.3.

Partial Taking: a Taking which is not a Total Taking.

Percentage Rent: as defined in section 3.

Permitted Exceptions: all encumbrances, liens and other matters affecting title to or the use of the Demised Premises whether or not of record existing before the acquisition of the Demised Premises by Landlord (except the Existing Mortgages) and any other such matters created by or the creation of which is consented to by Tenant (except the Mortgage).

Restoration: the replacement, repair or restoration of the Demised Premises as nearly as practicable (in the case of a Taking, after giving effect to any reduction in area caused thereby) to the value and general utility thereof immediately prior to such damage, destruction or Taking, together with any necessary temporary repairs and property protection pending completion of the work, and such alterations and additions as may be made at Tenant's election pursuant to and subject to the conditions of section 15.

- 5 -

DFF/10-29-85
0725R

Taking: a transfer during the term hereof of all or
any part of the Demised Premises or any interest
therein or right accruing thereto, as the result of or
in lieu of or in anticipation of the exercise of the
right of appropriation, confiscation, condemnation or
eminent domain, or a change of grade during the term
hereof affecting the Demised Premises or any part
thereof.

Tenant's Equipment: all merchandise counters and
cabinets, cash registers and point of sale machines,
accounting machines, and office equipment and all
trade fixtures and other furniture, furnishings and
equipment (including alterations, replacements, sub-
stitutions or additions thereto) not owned by Landlord
which (a) are removable without damage to the Demised
Premises which damage is not subject to being
repaired, (b) which were not intended by Tenant to
remain permanently in place when installed and (c) are
used principally in connection with the business being
conducted by Tenant or by others holding under Tenant
and may also be used in connection with the operation,
maintenance or protection of the Demised Premises or
any part thereof.

Total Taking: a Taking of all or substantially all of
the Demised Premises.

Unavoidable Delays: delays due to strikes, labor
disputes (including lock-outs arising out of labor
disputes), acts of God, inability to obtain labor or
materials, laws, ordinances, rules, regulations or
orders of governmental authorities, enemy or hostile
action, civil commotion, fire or casualty or any other
conditions or causes beyond the reasonable control of
Tenant; provided that, for the purposes of this
definition, lack of funds or lack of sales shall not
be deemed a cause beyond the reasonable control of
Tenant.

3.  Basic Rent and Percentage Rent.

3.1.  Basic Rent.  Tenant covenants and agrees to pay
as net rental (over and above any additional payments to be made
by Tenant as hereinafter provided) to Landlord for the Demised
Premises for each Lease Year of the Demised Term the amounts of
Basic Rent for the Demised Premises set forth in Exhibit B
attached hereto (hereinafter referred to as the "Basic Rent").
The Basic Rent shall be payable, in equal monthly installments

- 6 -

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM          INDEX NO. 652246/2018
NYSCEF DOC. NO. 2     Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 13 of 64 PageID #:26     RECEIVED NYSCEF: 05/08/2018

DFF/10-29-85
0725R

in advance on the first day of each full calendar month during
the Demised Term, with a payment of prorated·Basic Rent for the
period from the date hereof to the first day of the first full
calendar month in the Demised Term being payable on the com-
mencement date hereof. The Basic Rent and all other amounts
due to Landlord from Tenant under the terms of this Lease shall
be payable to the Beneficiary at the office of the Beneficiary
set forth above, or to such agent or at such other place as
Beneficiary may from time to time designate by notice to Tenant.
The Basic Rent shall be absolutely net to Landlord, so that this
Lease shall yield net, to Landlord, such Basic Rent throughout
the Demised Term of this Lease. Notwithstanding the foregoing,
Tenant shall not be obligated to pay any income, excess profits,
franchise tax or similar tax of Landlord, unless and only to the
extent that such tax is levied on Landlord in lieu of an Impo-
sition for real estate taxes on the Demised Premises. All
amounts payable under this section 3, as well as all other
amounts payable by Tenant to Landlord under the terms of this
Lease, shall be paid to Beneficiary at the office of Beneficiary
in lawful money of the United States of America which shall be
legal tender for payment of all debts and dues, public and
private, at the time of payment.

### 3.2. Percentage Rent.

3.2.1. Defined. Commencing with the eleventh
Lease Year and for each Lease Year thereafter during the Demised
Term hereof, in addition to the Basic Rent and all other sums
required to be paid by Tenant to Landlord hereunder, Tenant
shall pay to Landlord in the manner and to the extent set forth
in Section 3.2.2 a sum (hereinafter referred to as "Percentage
Rent") equal ·to the product obtained by multiplying (a) a
fraction, the numerator of which is the Basic Rent hereunder
for each such Lease Year and the denominator of which is the
Aggregate Basic Rent for such Lease Year, times (b) the amount
by which (1) the lesser of (x) the product obtained by multi-
plying the Applicable Percentage specified on Exhibit B hereto
for such Lease Year times the Gross Sales for such Lease Year
and (y) the Aggregate Maximum Rent specified in Exhibit B for
such Lease Year, exceeds (2) the Aggregate Basic Rent for such
Lease Year.

3.2.2. Payment of Percentage Rent. For the
eleventh Lease Year the total amount of Percentage Rent due, if
any, shall be payable within five (5) days following the receipt
of the annual statement of Gross Sales required by section 3.2.6
hereof. Beginning with the twelfth Lease Year, and for each
Lease Year thereafter, there shall be due and payable monthly,
in advance, at the same time, form and manner of payment as

- 7 -

DFF/10-29-85
0725R

Basic Rent, an estimated amount of Percentage Rent which shall
be equal to one-twelfth (1/12) of the amount by which the total
Basic Rent and Percentage Rent payable for the immediately
preceding Lease Year exceeds the monthly payment of Basic Rent
due for the current Lease Year.  It is recognized that the total
amount of Percentage Rent for each Lease Year will not be
determinable until the annual statement of Gross Sales for such
Lease Year has been delivered following the end of such Lease
Year.  Thus, the estimated monthly payments of Percentage Rent
coming due in each Lease Year, prior to the delivery of the
annual statement of Gross Sales for the immediately preceding
Lease Year, shall be equal to the amount by which the total
monthly payment of Basic Rent and estimated Percentage Rent, if
then payable, due for the last month of the preceding Lease
Year exceeds the monthly payment of Basic Rent for such current
Lease Year.  Following delivery of the annual statement of
Gross Sales for the previous Lease Year and the computation of
the Percentage Rent, if any, due for such Lease Year, the
monthly payment of estimated Percentage Rent shall be adjusted
to reflect the actual total rent payable for the preceding
Lease Year.  Tenant's obligation to pay accrued but unpaid
Percentage Rent for any Lease Year shall survive any termination
of this Lease or any expiration of the Demised Term.

     3.2.3.  Adjustments.  Within five (5) days follow-
ing the delivery of the annual Statement of Gross Sales for
each Lease pursuant to section 3.2.6 hereof, the Percentage
Rent payable for such Lease Year shall be determined and each
party hereby agrees to pay to the other, on demand, the amount
of any excess or deficiency in estimated Percentage Rent paid
by Tenant to Landlord during the preceding Lease Year.  Each
party further agrees to pay to the other within (5) days from
receipt of the annual statement of Gross Sales for the preceding
Lease Year any excess or deficiency in the monthly payments of
estimated Percentage Rent made during the current Lease Year
prior to the receipt of such annual statement of Gross Sales so
that the total estimated payments of Percentage Rent received
(as adjusted) under the Leases shall equal the amount due had
the sum of the Basic Rent and Percentage Rent payable for the
prior Lease Year under the Leases been known at the commencement
of the current Lease Year.  The obligation of the parties to so
adjust shall survive any termination of this Lease or any
expiration of the Demised Term.

     3.2.4.  "Lease Year" Defined.  The first Lease
Year shall commence on the first day of the Demised Term and
shall end at the close of the twelfth full calendar month fol-
lowing the commencement of the Demised Term.  Thereafter for
the next eight (8) years of the Demised Term each Lease Year

- 8 -

DFF/10-29-85
0725R

shall consist of successive periods of twelve (12) calendar months. The tenth Lease Year shall commence on the day following the last day of the ninth Lease Year and shall end on February 3, 1996. Thereafter each Lease Year of the Demised Term shall be as shown on Exhibit E hereto, it being the intent of the parties hereto that each Lease Year beginning with the eleventh Lease Year shall correspond with Tenant's fiscal year.

3.2.5. "Gross Sales" Defined. For the purpose of calculating Percentage Rent, "Gross Sales" means the gross amount received or to be received from all sales, both cash and on credit, made on or from the Demised Premises and all of the other premises demised by Landlord to Tenant under the Leases (hereinafter referred to as the "Aggregate Demised Premises"), whether received or to be received by Tenant or CPS, or any affiliate, assignee, sublessee, licensee or concessionaire of either, and shall include the gross amounts so received or to be received for orders taken on the Aggregrate Demised Premises though filled elsewhere, and, in cases of sales on credit, whether or not payment be actually made therefor, together with all charges for services made in or upon the Aggregate Demised Premises. Notwithstanding the foregoing, the following shall not be included in and, if previously included, shall be deducted from Gross Sales:

(i) all credits and refunds made to customers for merchandise returned or exchanged;

(ii) all sales of merchandise and services sold to employees of Tenant or CPS or any affiliate of CPS at a discount;

(iii) all payments made to third party credit or bank card companies as a discount rate on purchases charged at the Aggregate Demised Premises but not to exceed 2% of Gross Sales for each Lease Year;

(iv) receipts from public telephones, stamp machines and vending machines (other than from vending machine sales of merchandise made to customers of Tenant or CPS or any affiliate, assignee, sublessee, licensee or consessionaire of either), public toilets or public lockers;

(v) charges for parcel post or other delivery charges, gift boxes for purchases, gift wrapping, alteration service and workroom operations, shoe repair, hat repair, engraving, monogramming, pressing, cleaning, mending, and similar minor auxiliary services not usually or customarily considered as merchandise or rendition of services for profit;

- 9 -

DFF/10-29-85
0725R

(vi) sales by licensees or concessionaires
(excluding CPS and any affiliate of Tenant or CPS) of Tenant but
not in excess of 10% of Gross Sales for each Lease Year, provi-
ded there shall be included in Gross Sales all payments received
by Tenant or CPS from such licensees or concessionaires;

(vii) all sums and credits received in settle-
ment of claims for loss or damage to merchandise, or for mer-
chandise transferred to other stores not part of the Aggregate
Demised Premises or returned to manufacturers or jobbers for
refund;

(viii) all sums received by or paid to Tenant
or CPS on account of any sales tax or other similar tax col-
lected by Tenant or CPS from its customers on merchandise or
services which Tenant or CPS collects and pays, pursuant to any
law or laws now or hereafter in force;

(ix) sales of fixtures, equipment or property
which is not stock in trade;

(x) interest, service, finance or sales
carrying charges or other charges paid by customers or others
to Tenant for the extension of credit on sales, including
revolving credit insurance and health and accident insurance
issued in connection with customer credit;

(xi) merchandise purchased with gift certifi-
cates, provided that the sale of such gift certificates shall
be included in Gross Sales;

(xii) sales on orders where (a) the order is
not received at or filled from the Aggregate Demised Premises
and Tenant does not receive payment at the Aggregate Demised
Premises in connection therewith or (b) the order is placed at
the Aggregate Demised Premises (but not filled from the Aggre-
gate Demised Premises) for items sold by Tenant only through
mail orders where such items are neither physically sold nor
displayed on the Aggregate Demised Premises,

(xiii) the retail price allowed on all merchan-
dise traded in by customers for credit or the amount of credit
for discounts and allowances made in lieu of acceptance thereof,
provided such amounts were previously included in Gross Sales.

There shall not be deducted from such Gross Sales any
income, excess profits, capital stock, franchise or other taxes
based upon or measured by Tenant's income or profit.

- 10 -

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM    INDEX NO. 652246/2018

NYSCEF DOC. NO. 2    Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 17 of 64 PageID #:30    RECEIVED NYSCEF: 05/08/2018

DFF/10-29-85
0725R

              3.2.6.  <u>Statements of Gross Sales</u>.  Tenant shall deliver to Landlord at the office of Beneficiary:  (a) beginning with the first month of the eleventh Lease Year and within thirty (30) days after the close of each fiscal period of Tenant (approximately thirty (30) days) of the Demised Term thereafter, a written report signed by Tenant or by an authorized officer or agent of CPS, showing the Gross Sales made in the preceding fiscal period unless the Tenant has paid one twelfth of the Maximum Rent for such year for any such fiscal period, (b) for the first nine Lease Years, within ninety (90) days after the close of each fiscal year of Tenant all or part of which is included in any such Lease Year, a statement of Gross Sales for such fiscal year which shall be computed on a consistent basis for each fiscal year, in the manner used by CPS in generating its audited annual statements and in accordance with section 3.2.5 hereof and (c) commencing with the tenth Lease Year, within ninety (90) days after the close of each Lease Year, a statement of Gross Sales for the preceding Lease Year which shall be computed on a consistent basis for each Lease Year, in the manner used by CPS in generating its audited annual statements and in accordance with section 3.2.5 hereof.  The annual statement shall be accompanied by the signed certificate of CPS's chief financial officer certifying specifically that (i) he has examined the report of Gross Sales for the preceding Lease Year, (ii) his examination included such tests of Tenant's and CPS's books and records as he considered necessary or appropriate under the circumstances, (iii) such report presents fairly the Gross Sales of the preceding Lease Year, and (iv) the reported Gross Sales conform with and are computed in compliance with the definition of Gross Sales contained in section 3.2.5 hereof.

              Unless excused under the provisions of section 3.2.9, if Tenant shall fail to deliver such annual statement and certificate to Landlord within said ninety (90) day period, Landlord shall have the right, unless such failure is cured within fifteen (15) days following notice by Landlord to Tenant of such failure, thereafter to employ an Approved Independent Auditor to examine such books and records, as may be necessary to certify the amount of Tenant's Gross Sales for such Lease Year, and Tenant shall pay to Landlord the cost thereof as additional rent.  If such audit shall disclose that Tenant's records, in such Approved Independent Auditor's reasonable determination, are inadequate to disclose such Gross Sales, Landlord shall be entitled to receive for such Lease Year the Maximum Rent, and the difference between such Maximum Rent and the amounts actually paid by Tenant as Basic Rent and Percentage Rent shall be payable by Tenant to Landlord at the office of Beneficiary on written demand.  In addition, if there is an intentional misrepresentation in the annual statements prepared

- 11 -

DFF/10-29-85
0725R

by CPS's chief financial officer, then the Landlord may require
the certification of all such annual statements thereafter by
an Approved Independent Auditor employed by and at Tenant's
expense.

            3.2.7.  Tenant's Records.  Tenant may use a com-
puter recordkeeping system, or any other recordkeeping system
so long as such system records sales accurately and reasonably
permits the Landlord to verify the Tenant's statements of Gross
Sales.

            For the purpose of permitting verification by
Landlord of any amounts due as rent, Tenant will keep and pre-
serve or will cause CPS to keep and preserve for at least three
(3) years, and during the Demised Term shall keep at the Demised
Premises or at the offices of CPS's chief financial officer,
ordinary books, records, ledgers, and journals, as well as
records kept for income and sales tax purposes which shall dis-
close in reasonable detail all information required to permit
Landlord to verify Tenant's Gross Sales.  At any reasonable
time beginning with the eleventh (11th) Lease Year after ten
(10) days advance notice to Tenant, Landlord or any Mortgagee,
their agents and accountants, shall have the right, at their
expense, during business hours to make any examination or audit
of such books and records which Landlord or such Mortgagee may
desire.  If such audit shall disclose a liability in any Lease
Year for Basic Rent and Percentage Rent in excess of the Basic
Rent and Percentage Rent theretofore paid by Tenant for such
period, Tenant shall promptly pay such liability.  In addition,
if such audit shall disclose that Tenant has underpaid by three
percent (3%) or more any Percentage Rent for such Lease Year,
then in such event, Tenant shall promptly pay the cost of such
audit and interest at the Default Rate on all additional Per-
centage Rent then payable, for such Lease Year accruing from
the date such additional Percentage Rent and estimated Per-
centage Rent based on such revised Percentage Rent was due and
payable.  If Tenant disagrees with the results of such audit
and if such audit was not performed by an Approved Independent
Auditor employed by Landlord at Landlord's expense, Tenant,
within fifteen (15) days after receipt thereof may elect, at
its expense, by notice to Landlord, to employ an Approved
Independent Auditor to conduct a second audit and Landlord and
Tenant agree to be bound by the results thereof if the results
thereof are delivered to Landlord within one hundred eighty
(180) days of Tenant's notice to Landlord.  If such audit dis-
closes a rent liability for underpayment Tenant shall promptly
pay such liability and, in addition, if such audit discloses a
rent liability of three percent (3%) or more, Tenant shall also
pay interest at the Default Rate on all additional Percentage

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM
INDEX NO. 652246/2018

NYSCEF DOC. NO. 2
Case 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 19 of 64 PageID #:32
RECEIVED NYSCEF: 05/08/2018

DFF/10-29-85
07.25R

Rent then payable for such Lease Year accruing from the date
such additional Percentage Rent and estimated Percentage Rent
based on such revised Percentage Rent was due and payable.

3.2.8.  Adjustments to Aggregate Basic Rent and
Aggregate Maximum Rent.  In the event of (a) termination of any
of the Leases other than this Lease pursuant to the provisions
contained in any of the other Leases similar to those contained
in Sections 19 and 20 hereof, or (b) a reduction in Basic Rent
and Maximum Rent under any of the other Leases pursuant to a
Partial Taking with respect to the portion of the Aggregate
Demised Premises covered thereby, or (c) a cessation of oper-
ations under any other Lease pursuant to the provisions similar
to those contained in section 11.1 hereof, or (d) an assignment
of any of the other Leases permitted only because the Tenant
has agreed to pay Maximum Rent as provided in provisions of any
other Lease similar to those contained in section 29(a), then
(i) the Aggregate Basic Rent shall be deemed to be reduced by
(A) the amount of the Basic Rent payable under any Lease so
terminated or any Lease where operations have ceased as
described above or any Lease assigned or sublet as described
above and by (B) the amount of the reduction in Basic Rent under
such Leases as a result of a partial Taking, (ii) the Aggregate
Maximum Rent shall be reduced by (A) the amount of the Maximum
Rent payable under any Lease so terminated as specified on
Exhibit B and by (B) the amount of any reduction in Maximum
Rent resulting from a Partial Taking, and (iii) the Aggregate
Demised Premises shall no longer include any premises covered
by a Lease so terminated, by a Lease where operations have
ceased as described above, or by any Lease assigned or sublet
as described above.

3.2.9.  Limitation on Obligation to Provide
Statements.  If on or before the first day of any Lease Year
during the Demised Term, Tenant by notice to Landlord elects to
pay Maximum Rent after the tenth (10th) Lease Year for the
remainder of the Demised Term and makes the same election under
all of the other Leases, then, beginning with such Lease Year,
Tenant shall not be obligated to provide the statements required
pursuant to Sections 3.2.6 and 3.2.7 of this Lease; provided,
however, Tenant's election shall not relieve Tenant from pro-
viding any such statements for any periods of time arising
before the commencement date of the Lease Year for which such
election takes effect.  Such election shall obligate Tenant to
pay Maximum Rent for the remainder of the Demised Term commen-
cing with such Lease Year and Tenant may not thereafter revoke
such election, but Tenant shall no longer be obligated to pay
Percentage Rent under this section 3.2.

- 13 -

DFF/10-29-85
0725R

4. <u>Additional Rent</u>.  Tenant will also pay, as addi-
tional rent, all other amounts, liabilities and obligations
which Tenant herein assumes or agrees to pay, and, in the event
of any failure on the part of Tenant to pay any of the same,
Landlord shall have all rights, powers and remedies provided
for herein or by law or equity or otherwise in the case of non-
payment of the Basic Rent.  Tenant will also pay Beneficiary,
at the office of Beneficiary, on demand, as additional rent,
interest at the Default Rate on all overdue installments of
Basic Rent, Percentage Rent, and all additional rent from the
due date thereof until payment.

5. <u>No Counterclaim, Abatement, etc</u>.  The Basic Rent,
Percentage Rent, and such additional rent shall be paid without
notice, demand, counterclaim, setoff, deduction or defense, and
without abatement, suspension, deferment, diminution or reduc-
tion by reason of, and the obligations and liabilities of Tenant
under this Lease shall not be affected by, any circumstance or
occurrence whatsoever, including, without limitation, (a) any
damage to or destruction of the Demised Premises or any part
thereof (except as otherwise expressly provided in section 19),
(b) any restriction or prevention of or interference with any
use of the Demised Premises or any part thereof (except as
otherwise expressly provided in section 19), (c) any Taking of
the Demised Premises or any part thereof (except as otherwise
expressly provided in section 19), (d) except when caused solely
by the act or acts of Landlord, any title defect or encumbrance
or any eviction or prospective eviction from the Demised Prem-
ises or any part thereof by title paramount or otherwise, (e)
any bankruptcy, insolvency, reorganization, composition, adjust-
ment, dissolution, liquidation or other like proceeding of or
on the part of Landlord or any assignee of Landlord's equity in
the Demised Premises or any action taken with respect to this
Lease by any trustee or receiver of Landlord or of any such
assignee, or by any court in any such proceeding, (f) any
change, extension, waiver, indulgence or other action or omis-
sion in respect of any obligation or liability of Tenant, or
(g) any claim which Tenant has or might have against Landlord,
whether or not Tenant shall have had any notice or knowledge of
the foregoing.  Except as otherwise expressly provided in (d)
above and in section 19, Tenant waives all rights now or
hereafter conferred by statute or otherwise to quit, terminate
or surrender this Lease or the Demised Premises or any part
thereof, or to any abatement, suspension, deferment, diminution
or reduction of Basic Rent, Percentage Rent or additional rent,
on account of any occurrence.

6. <u>Extension of Demised Term</u>.  Tenant shall have the
right and privilege, at its option, to extend the Demised Term

Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 21 of 64 PageID #:34

DFF/10-29-85
0725R

for one additional period of five (5) years commencing February
4, 2001; and terminating January 28, 2006 (the "First Ex-
tension"), and two additional periods of ten (10) years each,
the first commencing January 29, 2006, and terminating January
30, 2016 (the "Second Extension"), and the second commencing
January 31, 2016 and terminating January 31, 2026 (the "Third
Extension") (collectively the "Additional Extensions").
Tenant's right to extend the Demised Term for each respective
Additional Extension is expressly subject to the condition that
there shall not have been an Event of Default on the part of
Tenant that has occurred and is continuing and to the further
condition that on or before the date of such exercise Tenant
shall have extended the term of each of the other Leases for an
additional period extending at least through the termination
date of such Additional Extension.  During each such Additional
Extension, the terms and conditions of this Lease shall continue
in full force and effect, and the Basic Rent, Maximum Rent,
Applicable Percentage, Aggregate Maximum Rent and Aggregate
Basic Rent shall be as set forth in Exhibit B hereto for each
Lease Year during such Additional Extension.  The option to
extend the Demised Term for each respective Additional Extension
shall be exercisable by written notice given not less than
twelve (12) months prior to the expiration of the Demised Term,
and the giving of such notice shall have the effect, without
further action of Landlord or Tenant, of extending the Demised
Term for the period of the Additional Extension, and Tenant
shall not thereafter be entitled to revoke such extension.
[Lincoln Mall, Yorktown and North Riverside only]

          7.  Payment of Impositions, etc.  Subject to section
10 (relating to permitted contests), Tenant will pay (or cause
to be paid) all Impositions, whether accrued or arising before
or after the date of this Lease, before any fine, penalty,
interest or cost may be added for non-payment, provided that,
if any such Imposition may at the option of the payor be paid
in installments (whether or not interest shall accrue on the
unpaid balance of such Imposition), Tenant may exercise the
option to pay the same (and any accrued interest on the unpaid
balance of such Imposition) in installments and, in such event,
will pay such installments (or cause the same to be paid) before
delinquency.  Upon the expiration of the Demised Term, Tenant
shall be liable for such proportion of the Impositions as shall
be payable with respect to the Demised Premises or any part
thereof for the tax fiscal year in which the Demised Term ends
as the part of such tax fiscal year during which this Lease is
in effect shall bear to the whole of such tax fiscal year.
Tenant will furnish to Landlord, upon request, official receipts
for, or other reasonably satisfactory evidence of, payment of
Impositions.

DFF/10-29-85
0725R

8.    Compliance with Legal and Insurance Requirements,
Instruments, etc.   Subject to section 10 (relating to permitted
contests), Tenant at its expense will promptly comply with all
Legal Requirements and Insurance Requirements, whether or not
compliance therewith shall require structural changes in the
Improvements or interfere with the use and enjoyment of the
Demised Premises, and will procure, maintain and comply with
all permits, licenses and other authorizations required for any
use of the Demised Premises or any part thereof then being made,
and for the proper erection, installation, operation and main-
tenance of the Demised Premises and Tenant's Equipment or any
part thereof, and will comply with any Permitted Exceptions.

9.    Liens, etc.

9.1.   In General.   Subject to section 10 hereof
(relating to permitted contests), Tenant will not directly or
indirectly create or permit to be created and, if so created,
will promptly discharge, any mortgage, lien, encumbrance or
charge on, pledge of, or conditional sale or other title reten-
tion agreement with respect to the Demised Premises or any part
thereof or Tenant's interest therein other than the Permitted
Exceptions (excluding liens for unpaid amounts created pursuant
to the provisions thereof and Impositions), the Mortgage, the
Existing Mortgages and any other liens created by Landlord.

9.2.   Mechanics' or other liens.

(a)   Subject to Section 10 hereof (relating to
permitted contests), the Tenant shall (i) immediately after it
is filed or claimed, have released (by bonding or otherwise)
any mechanics', materialman's or other lien filed or claimed
against the Demised Premises by reason of labor or materials
provided for or about any or all of the Demised Premises during
or prior to the Demised Term (other than liens created by Land-
lord), or otherwise arising out of Tenant's use or occupancy of
any or all of the Demised Premises, and (ii) defend, indemnify
and hold Landlord harmless against and from any and all liabil-
ity, claim of liability or expense (including, by way of example
rather than of limitation, that of reasonable attorneys' fees)
incurred by the Landlord on account of any such lien or claim.

(b)   Subject to Section 10 hereof (relating to
permitted contests), if Tenant fails to discharge any such lien
within fifteen (15) days after it first becomes effective
against the Demised Premises, then, in addition to any other
right or remedy held by Landlord on account thereof, Landlord
may (i) discharge it by paying the amount claimed to be due or
by deposit or bonding proceedings, and/or (ii) in any such

- 16 -

DFF/10-29-85
0725R

event compel the prosecution of any action for the foreclosure
of any such lien by the lienor and pay the amount of any judg-
ment in favor of the lienor with interest, costs and allowances.
Tenant shall reimburse Landlord for any amount paid by Landlord
to discharge any such lien and all expenses incurred by Landlord
in connection therewith, together with interest thereon at the
Default Rate from the respective dates of Landlord's making such
payments or incurring such expenses.

      10.   Permitted Contests.  After prior written notice
to Landlord, Tenant, at its expense, may contest, or cause to be
contested, by appropriate legal or other proceedings conducted
in good faith and with due diligence, the amount or validity or
application, in whole or in part, of any Imposition or any Legal
Requirement or any Insurance Requirement or any lien, encum-
brance or charge referred to in section 9 or any charge referred
to in section 12, or any obligation or liability under any
instrument by which Tenant or CPS is bound, provided that:  (a)
in the case of an unpaid Imposition, lien (including mechanic's
liens), encumbrance or charge, such proceeding shall suspend the
collection thereof from Landlord and from the Demised Premises
and any rent or other income therefrom and shall not interfere
with the payment of any such rent or income, (b) neither the
Demised Premises or any rent therefrom nor any part thereof or
interest therein would be in any imminent danger of being sold,
forfeited or lost, (c) in the case of a Legal Requirement,
Landlord cannot be subject to material civil liability or any
criminal liability for failure to comply therewith, (d) Tenant
shall have furnished such security, if any, as may be required
in the proceedings, (e) the non-payment of the whole or any part
of any tax, assessment lien (including mechanic's liens), or
charge will not result in any execution upon, sale of, or for-
feiture of the Demised Premises or any part thereof because of
such nonpayment, (f) if the net worth of CPS for the previous
fiscal year, as determined in accordance with generally accepted
accounting principles, is less than One Hundred Forty-Five
Million Dollars ($145,000,000), then Tenant shall purchase a
surety bond in form, substance and amount acceptable to Landlord
indemnifying Landlord from losses resulting from such contest,
and (g) in the case of any Insurance Requirement, the failure
of Tenant to comply therewith shall not affect the validity of
any insurance required to be maintained by Tenant under section
18.1.  Any contest, whether before or after payment, may be made
in the name of Landlord or Tenant or both, as Tenant shall
determine, but, if the name of Landlord is used therein, Land-
lord shall be notified thereof at least 15 days prior to the
commencement of the proceeding.  If requested by Tenant, Land-
lord may, at its own expense, but shall not be required to,
participate actively in any such contest, but Tenant shall be

- 17 -

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM
NYSCEF DOC. NO. 2

INDEX NO. 652246/2018
RECEIVED NYSCEF: 05/08/2018

DFF/10-29-85
0725R

entitled to any refund of any such tax, assessment or charge
and penalties or interest thereon which have been paid by Ten-
ant, or by Landlord and reimbursed by Tenant to Landlord.  So
long as Tenant is conducting any contest in accordance with the
provisions of this Section 10, Tenant shall not be in default
under any provision of this Lease with respect to the matter
being contested.

### 11.  Use of Demised Premises, etc.

11.1.  Use; Name.  Tenant shall, for the benefit of
Landlord, during the Demised Term, continuously operate, or
cause to be operated, department store facilities on the Demised
Premises under its trade name which shall include the words
"Carson Pirie Scott & Co." or "Carsons" (such words being the
principal element of such trade name) or under such other trade
name as Tenant may from time to time be operating the majority
of its department stores in the Chicago metropolitan area.  The
department store facilities so operated by Tenant shall have
standards of store operation, hours, merchandising and pricing
which are substantially similar to those generally utilized
from time to time by it in the operation of the majority of its
department stores located in the Chicago metropolitan area.
Tenant's covenants set forth in this section 11.1 shall be
inoperative during any period or periods of time that Tenant's
store on the Demised Premises is undergoing such repair,
rebuilding, alteration, razing or restoration permitted by and
in accordance with the terms of this Lease as shall result in
it being impracticable to comply with such covenants.  Notwith-
standing any provision of this Lease, Tenant may, by notice to
Landlord, elect to cease operating the Demised Premises as a
department store in accordance with the foregoing provisions of
this section 11.1; however, upon such notice (and thereafter for
the remainder of the Demised Term unless Tenant exchanges the
Exchange Property for the Demised Premises as provided in sec-
tion 19.4) Maximum Rent for each Lease Year after the tenth
(10th) Lease Year (prorated to the date of such notice for the
Lease Year in which the notice is given) shall become due and
payable at such times and in the same manner as though such
Maximum Rent had been designated as Basic Rent for the balance
of the Demised Term after the tenth (10th) Lease Year, and
Tenant shall remain obligated to perform all of the other obli-
gations it is required to perform under this Lease.  Upon such
election to cease operating and pay Maximum Rent, Tenant shall
no longer be obligated to pay Percentage Rent under section 3.2
hereof.  Notwithstanding the foregoing provisions of this
section 11.1, nothing contained herein shall be deemed to
release Tenant from its duty to comply with the provisions of
the Operating Agreement.

- 18 -

**FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM**    INDEX NO. 652246/2018

NYSCEF DOC. NO. 2    Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 25 of 64 PageID #:38    RECEIVED NYSCEF: 05/08/2018

DFF/10-29-85
0725R

11.2. Operation of Business. Subject to section 10
of this Lease (relating to permitted contests), Tenant, in the
use, occupation and control of the Demised Premises and in the
prosecution or conduct of any business therein covenants and
agrees that it will not use or permit to be used any part of
the Demised Premises for any dangerous, noxious, offensive or
unlawful trade or business. Tenant shall not cause or maintain
any nuisance in, at, or on the Demised Premises. Subject to
section 10 (relating to permitted contests), Tenant, at its
expense, will promptly comply with all agreements, conditions,
limitations and other terms of all leases, easements, rights of
way, grants, servitudes, privileges, permits, franchise, licen-
ses constituting the Permitted Exceptions, in each case, to the
extent compliance therewith is required of Landlord or Tenant
under the terms thereof. Tenant will not take any action which
results in a forfeiture or termination of the rights afforded
to Landlord or Tenant under any such instruments and will not,
without the prior written consent of Landlord (which consent
shall not unreasonably be withheld), amend in any material
respect any of such instruments.

11.3. Operating Agreement. Tenant shall comply with
all of the terms and provisions of the Operating Agreement which
affect the Demised Premises. Tenant, to the extent it is
entitled to do so, will maintain the Operating Agreement in
full force and effect and will, from time to time, upon request
by Landlord, take all necessary action to enforce Tenant's and
Landlord's rights thereunder and to assure the performance by
Tenant and the other parties to the Operating Agreement of its
and their respective obligations thereunder, provided, however,
that Tenant shall not be required to institute legal proceedings
against any other party to the Operating Agreement unless the
failure to do so is likely to result in a material adverse
impact upon either the value of the Demised Premises or the
amount of Gross Sales produced therefrom. Landlord and Tenant
agree that neither of them will (a) assign or otherwise transfer
its interests under the Operating Agreement, except, in the case
of Landlord, in connection with a conveyance or Mortgage of the
Demised Premises and, in the case of Tenant, in connection with
an assignment or transfer of this Lease by Tenant permitted
under section 29 hereof, (b) terminate or cancel the Operating
Agreement or consent to or accept any such termination or can-
cellation or do any act which would terminate or cancel the
same, or (c) amend or modify the Operating Agreement, or give
any consent, waiver or approval thereunder, or take any other
action in connection therewith, without in each instance, the
prior written consent of the other; provided, however, that
Landlord will consent to any amendment to the Operating Agree-
ment requested by Tenant which (i) does not materially adversely

- 19 -

Case. 1:20-cv-03970 Document #. 1-1 Filed: 07/07/20 Page 26 of 64 PageID #:39
RECEIVED NYSCEF: 05/08/2018

DFF/10-29-85
0725R

affect Gross Sales from the Demised Premises or the value of the
Demised Premises, or (ii) to the extent, but only to the extent,
such amendment provides for a change in the expiration date of
the term during which Tenant must operate a "Carson Pirie
Scott" store on the Demised Premises to a date which is no
earlier than the expiration date of the Fixed Term.

           12.   Utility Services.  Tenant will pay or cause to be
paid (subject to section 10, relating to permitted contests) all
charges for all public and private utility services and all
sprinkler systems and protective services at any time rendered
to or in /connection with the Demised Premises or any part
thereof, whether accrued or arising before or after the date of
this Lease, will comply with all contracts relating to any such
services, and (subject to Unavoidable Delays) will do all other
things reasonably required for the maintenance and continuance
of all such utility services and sprinkler systems.

           13.   Indemnification by Tenant.  Except in instances
of Landlord's negligence or willful misconduct, Tenant will
protect, indemnify, save harmless and defend Landlord from and
against any and all liabilities, obligations, claims, damages,
penalties, causes of action, costs and expenses (including,
without limitation, reasonable attorneys' fees of Landlord's
counsel and expenses), whether or not arising before or during
the Demised Term, imposed upon or incurred by or asserted
against Landlord by reason of any of the following:  (a) any
accident, injury to or death of persons (including workmen) or
loss of or damage to property occurring on or about the Demised
Premises or the adjoining property, sidewalks, curbs, vaults
and vault space, if any, streets, alleys or ways, (b) any use,
non-use or condition of the Demised Premises or the adjoining
sidewalks, curbs, vaults and vault space, if any, streets,
alleys or ways, (c) any failure on the part of Tenant to comply
with any of the terms of this Lease or (d) any work in connec-
tion with the performance in full of Tenant's obligations under
this Lease.  Landlord will promptly notify Tenant of any claim
asserted against Landlord on account of any such injury or
claimed injury to persons or property and shall promptly deliver
to Tenant the original or a true copy of any summons or other
process, pleading or notice issued in any action, suit or pro-
ceeding to assert or enforce any such claim and shall also
notify Tenant of any facts of which Landlord has actual notice
which could be asserted as a defense or counterclaim to such
claim.  Tenant may and, upon request of Landlord, shall, at
Tenant's expense, resist and defend any such suit with attorneys
designated by Tenant, and Landlord shall have the right, if it
sees fit, to participate in such defense at its own expense.
Landlord shall cooperate with Tenant, upon Tenant's request and

DFF/10-29-85
0725R

at Tenant's expense, in any such suit or action brought against
Tenant. The obligations of Tenant under this section 13 relat-
ing to matters occurring during the Demised Term of this Lease
shall survive any termination of this Lease.

14. __Maintenance and Repair, etc__. Subject to the
provisions of section 15 and to Unavoidable Delays and excluding
Tenant's Equipment, Tenant will keep or cause to be kept the
Improvements and the sidewalks, curbs, vaults and vault space,
if any, adjoining the same, and the parking lot or lots located
on the Land, in good and substantial order and repair and at its
expense will promptly make or cause to be made all structural,
exterior and interior repairs, renewals and replacements neces-
sary to that end, in each case ordinary wear and tear excepted.
All replacements shall be at least equal in quality to the
original. Tenant's obligation to repair shall include the
obligation to rebuild in the event of destruction however
caused, provided that damage by fire or other cause for which
Tenant is obligated to maintain insurance by any of the provi-
sions of section 18 shall be governed by the provisions of sec-
tions 18 and 19 and damage by any Taking shall be governed by
the provisions of section 19. Landlord shall be under no obli-
gation to rebuild, replace, maintain or make repairs to the
Demised Premises during the Demised Term.

15. __Improvements, Alterations and Changes__.

15.1. __General Provisions__. Tenant shall have the
right at any time and from time to time during the Demised Term
to make such changes and alterations to the Demised Premises as
Tenant shall deem necessary or desirable, which changes and
alterations shall be made in compliance with the terms and con-
ditions of the Operating Agreement, and shall be made in all
cases subject to the following terms and conditions, which
Tenant covenants to observe and perform:

(a) No change or alteration shall be undertaken
until Tenant shall have procured and paid for, so far as the
same may be required from time to time, all permits and autho-
rizations of the various state and municipal departments or
other governmental or quasi-governmental authorities having
jurisdiction, and Landlord agrees to join in the application
for such permits or authorizations whenever such action is
necessary; provided, however, that Tenant shall indemnify and
hold Landlord harmless from any liability under and in connec-
tion with any such permits or approvals.

(b) No structural change shall be undertaken, nor
shall any other change or alteration involving an estimated

- 21 -

DFF/10-29-85
0725R

cost of more than Five Hundred Thousand Dollars ($500,000) be
undertaken, until plans and specifications have first been
submitted to and approved in writing by Landlord and each
Mortgagee, such approvals not to be unreasonably withheld or
delayed and such approval to be given by Landlord and each
Mortgagee only if the changes and alterations when completed
will be of such a character as to not reduce or otherwise
adversely affect the fair market value and operational utility
of the Improvements.

(c) All work done in connection with any change
or alteration shall be done in a good and workmanlike manner
and in compliance with all Legal Requirements. The cost of any
such change or alteration shall be paid in cash so that the
Demised Premises shall at all times be free of liens (subject
to section 10 relating to permitted contests) for labor and
materials supplied or claimed to have been supplied to the
Demised Premises. The work of any change or alteration shall
be prosecuted with reasonable dispatch, subject to Unavoidable
Delays.

15.2. Conditions of Total or Substantial Demolition.
Prior to commencing any demolition permitted pursuant to section
15.1 of the whole or any "substantial" (as used herein, sub-
stantial shall mean at a cost of Five Hundred Thousand Dollars
($500,000) or more) part of any present or future building on
the Demised Premises pursuant to this section 15, and if the
net worth of CPS for the preceding fiscal year is less than One
Hundred Forty-Five Million Dollars ($145,000,000), as determined
in accordance with generally accepted accounting principles,
then Tenant shall, upon request by Landlord, either:

(a) deposit in escrow with a bank or trust company
or other financial institution specified by Landlord an amount
of money equal to the estimated cost of the demolition of the
building or buildings to be demolished and the construction of
the new building or buildings to be erected in substitution
therefor upon the Demised Premises, as the estimated cost of
such demolition and construction shall be determined by Tenant's
architect in charge of such work (who shall be so designated
subject to the approval of Landlord, which approval shall not
be unreasonably withheld) and approved by Landlord; and during
the course of such demolition and construction the amount so
deposited with such bank, trust company or other financial
institution shall be made available for and shall be paid out
by such bank or trust company or other financial institution to
Tenant from time to time as the work progresses in amounts equal
to the cost of labor and material incorporated into and used in
such work and builders', architects', and engineers' fees and

- 22 -

Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 29 of 64 PageID #:42

DFF/10-29-85
0725R

other charges and expenses in connection with such work, upon
delivery to said bank, trust company or other financial insti-
tution and Landlord of a certificate of the architect in charge
of such work certifying that the amounts to be paid to Tenant
are payable to Tenant in accordance with the provisions of this
section 15.2 and that such amounts are then due and payable or
have theretofore been paid; any balance remaining upon comple-
tion of such construction, so long as no Event of Default shall
have occurred and be continuing, to be returned to the Tenant;
or

                (b) deliver to Landlord payment and performance
bonds from a surety company or other surety reasonably satis-
factory to Landlord in form reasonably satisfactory to Landlord
and in an amount equal to the estimated cost of the demolition
of the building or buildings to be demolished and the construc-
tion of such new building or buildings to be erected in substi-
tution therefor upon the Demised Premises, as the estimated cost
of such demolition and construction shall be determined by Ten-
ant's architect in charge of such work (who shall be so desig-
nated subject to the approval of Landlord, which approval shall
not be unreasonably withheld), to guarantee the completion of
and payment for such demolition and such new building or build-
ings.

                15.3.  Title to Alterations.  All alterations, addi-
tions and improvements of the Demised Premises made pursuant to
this section 15 shall immediately become part of the Demised
Premises and shall be and remain the property of Landlord and
shall be subject to all of the terms and conditions of this
Lease.

                16.  Improvements; Tenant's Equipment.

                16.1.  Improvements Part of Realty.  Landlord and
Tenant acknowledge and agree that the Improvements shall be
deemed to constitute a part of the real property on which they
are located.

                16.2.  Removal of Tenant's Equipment, etc.  Tenant
shall not be required to remove Tenant's Equipment on the expi-
ration or earlier termination of this Lease; however, any of
Tenant's Equipment not removed upon such expiration shall be
considered abandoned and may be appropriated, sold, destroyed,
or otherwise disposed of by Landlord without notice to Tenant,
CPS, any affiliate, sublessee, licensee or concessionaire of
either or any other person, firm or corporation and without
obligation to account therefor and Tenant shall remove all
trash and any personal property (other than Tenant's Equip-
ment) owned by Tenant and located on the Demised Premises.  If

- 23 -

DFF/10-29-85
0725R

Tenant elects to remove Tenant's Equipment at any time, whether
during or after the expiration of the Demised Term; Tenant at
its expense will promptly repair all damage to the Demised
Premises caused by any such removal. Landlord shall not be
responsible for any loss of or damage to or loss of the use of
Tenant's Equipment resulting from the exercise of any of its
rights under this section 16.2.

    17. No Claims Against Landlord, etc. Nothing con-
tained herein shall be construed to be a consent or request by
Landlord or Tenant, express or implied, to permit the other to
subject the interest of Landlord or Tenant, as the case may be,
to any mechanics', materialmen's or similar liens, but on the
contrary any such consent is hereby expressly denied.

    18. Insurance.

    18.1. Risks to be Insured. Tenant at its expense will
maintain with insurers approved by Landlord (which approval
shall not unreasonably be withheld) (a) insurance with respect
to the Improvements against loss or damage by fire and against
such other risks as are included in coverage of the type now
known as "all risk" coverage, in amounts equal to the full
replacement value thereof (excluding excavations, foundations,
and architect's and engineer's fees) without deduction for
depreciation, (b) public liability and property damage liability
insurance applicable to the Demised Premises in the amount of
$5,000,000 combined single limit, (c) explosion insurance in
respect of any steam and pressure boilers and similar apparatus
located in the Demised Premises in an amount not less than
$300,000, (d) war risk insurance (to the extent obtainable from
the United States Government or any agency thereof and if cus-
tomarily obtained by department stores of similar quality and
size to CPS), (e) appropriate workmen's compensation insurance
or other insurance against liability arising from the claims of
workmen in respect of any work done on or about the Demised
Premises in such amounts as are required by law and (f) such
other insurance in such amounts and against such insurable
hazards as Landlord from time to time may reasonably require by
written notice to Tenant. For the purposes of this section
18.1, the full replacement value of the Improvements shall be
the amount necessary to replace the Improvements with property
and materials of a like kind, quality and value (excluding
excavations, foundations and architect's and engineer's fees),
without deduction for depreciation. Notwithstanding the fore-
going, any of such insurance policies may provide for a deduct-
ible not in excess of One Hundred Thousand Dollars ($100,000)
and all such insurance policies shall be in such amounts so as
not to cause the Landlord, Tenant, or any Mortgagee to be a
co-insurer. With the written approval of Landlord, the
foregoing coverages, as to both type and extent, may be changed

- 24 -

DFF/10-29-85
0725R

from time to time by Tenant to such coverages as are standard at the time of change in the retail department store business.

18.2. Policy Provisions and Certificates. The insurance maintained by Tenant under section 18.1 hereof shall name Tenant, Landlord and each Mortgagee as additional insureds as their respective interests may appear. The insurance maintained by Tenant under section 18.1 shall bear a mortgagee endorsement and, if appropriate, a lender's loss payable endorsement in favor of each Mortgagee and shall provide that all property losses insured against shall be adjusted by Tenant (subject to Landlord's approval of final settlement of estimated losses of Two Hundred and Fifty Thousand Dollars ($250,000) or more) and the proceeds thereof shall be paid, as to casualties resulting in insurance proceeds of Two Hundred Fifty Thousand Dollars ($250,000) or greater, to the Landlord, to be applied in the manner set forth in this Lease. Casualties resulting in insurance proceeds of less than Two Hundred Fifty Thousand Dollars ($250,000) shall be paid directly to Tenant and used by Tenant for the Restoration of the Demised Premises. All insurance maintained by Tenant shall provide that (a) no deductions shall be made from the amounts thereof, (b) no cancellation or reduction thereof shall be effective until at least thirty (30) days after receipt by Mortgagee of written notice thereof, and (c) all losses shall be payable as provided for in this Section 18.2 notwithstanding any act or negligence of Tenant, Landlord or Mortgagee or their respective agents or employees which might, absent such agreement, result in a forfeiture of all or part of such insurance payment and notwithstanding (i) the occupation or use of the Demised Premises for purposes more hazardous than those permitted by the terms of such policy, (ii) any foreclosure or other action or proceeding taken pursuant to any provisions of any Mortgage upon the happening of a default thereunder or any change in title or ownership of the Demised Premises or any part thereof. Tenant may effect any of the insurance required under section 18.1 under blanket policies carried by Tenant covering the Demised Premises and other property or assets not included within the Demised Premises, provided that any such policy shall specify that portion of the total coverage of such policy that is allocated to the Demised Premises and shall, in all other respects, comply with the requirements of this section 18.

18.3. Delivery of Policies, etc. Prior to the commencement date of this Lease and at least 30 days prior to the expiration of any policy, Tenant will deliver to Landlord, at the office of Beneficiary, and each Mortgagee certificates for all policies evidencing all insurance Tenant is required to maintain under this section 18 and if required by any Mortgagee true and correct copies of all such policies; provided, that if

- 25 -

DFF/10-29-85
0725R

(c) <u>Total Taking</u>.  If the Demised Premises are
subject to a Total Taking, this Lease shall terminate on the
date on which title to so much of the Demised Premises as are
subject to the Total Taking vests in the condemning authority,
and the Basic Rent, Percentage Rent and any additional rent to
be paid by Tenant hereunder shall be apportioned and paid to
the date of such termination and any award resulting from such
Total Taking shall be the property of Landlord and paid to
Landlord, or as it may direct.

(d) <u>Partial Taking</u>.  If the Demised Premises are
subject to a Taking other than a Taking described in subpara-
graphs (b) and (c) hereof, this Lease shall remain in full force
and effect, and, subject to the provisions of subparagraph (e)
hereof, all rent payable hereunder shall continue unabated.
Whether the proceeds or award from such Taking are available or
adequate, Tenant shall, promptly after the date on which title
to that part of the Demised Premises subject to the Taking vests
in the condemning authority, commence and complete Restoration
of the Demised Premises to an architectural whole, as nearly as
possible to its value, condition and character immediately
before such Taking, all in accordance with plans and specifica-
tions therefor which shall have been submitted to and approved
in writing by Landlord.  The proceeds or award resulting from
such Taking shall be received by Landlord and after deducting
all costs and expenses (including reasonable attorneys' fees)
incurred by Landlord in seeking and/or obtaining the same shall
be paid in the following order and manner:

(i) Landlord shall, unless Tenant has com-
mitted an Event of Default hereunder which is continuing or a
condition exists which would, with notice and the passage of
time, constitute an Event of Default hereunder, pay, out of
such award, to Tenant, sums sufficient to pay or reimburse
Tenant for the cost of Restoration, subject to the following
terms and conditions:

(A) there shall be paid to Tenant from
such proceeds or award all or such part thereof as shall equal
the cost to Tenant of effecting the Restoration of the Demised
Premises;

(B) payment to Tenant pursuant to
subdivision (A) above shall be made by Landlord from time to
time as the Restoration progresses in amounts equal to the cost
of labor and material incorporated into and used in such Res-
toration and builders', architects' and engineers' fees and
other charges and expenses incurred in connection with such
Restoration, upon delivery to Landlord of: (1) the certificate

DFF/10-29-85
0725R

of the architect (designated by Tenant subject to the approval
of Landlord) in charge of such work certifying, in each case,
the amounts incurred to date by Tenant for Restoration costs
and not previously reimbursed, and stating that the balance of
proceeds held by Landlord after the making of such payment to
Tenant will be sufficient to complete the Restoration, and (2)
receipt by Landlord of evidence that there are no mechanics'
liens or similar liens for labor or materials supplied in
connection with the Restoration; and

(ii) the balance of such award shall be
retained by Landlord and shall be the property of Landlord.

(e) Adverse Partial Taking. If a Taking
described in subparagraph (d) hereof shall materially and
adversely affect the Gross Sales achievable by Tenant from the
Demised Premises and such material and adverse effect cannot be
remedied by the Restoration of the Demised Premises and Tenant
provides Landlord with credible evidence of such material and
adverse effect, then the Basic Rent and Maximum Rent payable
hereunder shall be equitably reduced as of the date of such
Taking. If the parties cannot agree as to the amount of such
reduction then such reduction shall be submitted to and settled
by arbitration in the county and state in which the Demised
Premises are located in accordance with the rules then obtaining
of the American Arbitration Association and the decision ren-
dered thereunder shall be final and binding upon the parties
hereto and judgment thereon may be entered in any court having
jurisdiction thereof.

19.2. Fire and Other Casualties.

(a) If all or substantially all of the Demised
Premises are destroyed due to fire or any other casualty, then
the Tenant shall promptly notify Landlord of such occurrence
and, by delivering written notice thereof to Landlord within
thirty (30) days following the occurrence of any such casualty,
exercise one of the following options:

(i) Tenant may elect to pay punctually all
Basic Rent, Percentage Rent, additional rent and any other sums
payable under this Lease, without abatement or reduction,
observe all of the provisions hereof and promptly commence and
complete the Restoration of the Demised Premises with due
diligence, at Tenant's expense and without regard to whether
insurance proceeds are available or adequate, as nearly as is
possible to the value, condition and character of the Demised
Premises immediately before such casualty, all in accordance
with plans and specifications submitted to and approved in

- 28 -

DFF/10-29-85
0725R

writing by Landlord. All insurance proceeds payable as a result
of such casualty under policies of insurance against the same
shall become the property of Landlord and shall, unless Tenant
has committed an Event of Default hereunder which is continuing
or a condition exists which would, with notice and the passage
of time, constitute an Event of Default hereunder, be paid to
Tenant after deducting all costs and expenses (including
reasonable attorneys' fees) incurred by Landlord in seeking
and/or obtaining such proceeds subject to the following terms
and conditions:

(A) there shall be paid to Tenant from
such proceeds all or such part thereof as shall equal the cost
to Tenant of effecting the Restoration of the Demised Premises;

(B) payment to Tenant pursuant to sub-
section (A) above shall be made by Landlord from time to time
as the Restoration progresses in amounts equal to the cost of
labor and material incorporated into and used in such Resto-
ration and builders', architects' and engineers' fees and other
charges and expenses incurred in connection with such Restora-
tion, upon delivery to Landlord of: (1) the certificate of the
architect (designated by Tenant subject to the approval of
Landlord) in charge of such work certifying, in each case, the
amount incurred to date by Tenant for Restoration costs and not
previously reimbursed, and stating that the balance of proceeds
held by Landlord after the making of such payment to Tenant
will be sufficient to complete the Restoration, and (2) receipt
by Landlord of evidence that there are no mechanics liens or
similar liens for labor or materials supplied in connection
with the Restoration; and

(C) the balance of any proceeds shall
be retained by Landlord; or

(ii) Tenant may elect not to restore the
Demised Premises and, instead, pay Maximum Rent after the tenth
(10th) Lease Year for the remainder of the Demised Term (Tenant
thereafter being no longer obligated to pay Percentage Rent
under section 3.2 hereof) and the insurance proceeds resulting
from such casualty shall be the property of Landlord and be
promptly paid to Landlord or as it may direct; provided, how-
ever, that if Tenant's election not to restore the Demised
Premises shall constitute an event of default under the Operat-
ing Agreement, then Tenant shall not be entitled to elect to
proceed under this paragraph (ii); or

(iii) Tenant may elect not to restore the
Demised Premises and, instead, exchange the Demised Premises
for the Exchange Property in accordance with and subject to the
terms and conditions of section 19.4 of this Lease, including,
without limitation, compliance by Tenant at the time of notice

- 29 -

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM
INDEX NO. 652246/2018
NYSCEF DOC. NO. 2
Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 35 of 64 PageID #:48
RECEIVED NYSCEF: 05/08/2018

DFF/10-29-85
0725R

of its election to proceed under this paragraph (iii) with any
notice provisions provided thereunder, and the insurance pro-
ceeds resulting from such casualty, upon such exchange, after
deducting all costs and expenses described in Paragraph
19.2(a)(i) hereof, shall be the property of Tenant and be
promptly paid to Tenant or as it may direct; provided, however,
that if Tenant's election not to restore the Demised Premises
shall constitute an event of default under the Operating
Agreement, then Tenant shall not be entitled to elect to
proceed under this paragraph (iii). Notwithstanding any of the
foregoing provisions of this paragraph (iii), if Landlord
refuses to permit the exchange of the Exchange Property for the
Demised Premises as provided for in section 19.4 of this Lease,
then this Lease shall terminate and the Basic Rent, Percentage
Rent and any additional rent to be paid by Tenant under this
Lease shall be apportioned and paid to the date of such
termination and any insurance proceeds resulting from such
casualty, less any expenses incurred by Landlord in the
collection of such proceeds shall be paid to Landlord or as it
may direct.

(b) If Tenant fails to deliver written notice of
its election in accordance with the foregoing paragraphs (i),
(ii) and (iii) within thirty (30) days following the occurrence
of any such casualty, Tenant shall be deemed to have elected
the option specified in paragraph (i).

(c) Between the time of any such casualty and
the making by Tenant of its election under this subsection (a),
Tenant shall be obligated to continue to pay punctually all
Basic Rent, Percentage Rent, additional rent and any other sums
payable under this Lease, without abatement or reduction, and
to observe all of the provisions of this Lease.

(d) If less than all or substantially all of the
Demised Premises are damaged or destroyed due to fire or other
casualty, then Tenant shall continue to pay punctually all Basic
Rent, Percentage Rent, additional rent and any other sums pay-
able under this Lease, without abatement or reduction, observe
all of the provisions hereof and, at Tenant's expense, immedi-
ately and with due diligence and without regard to whether
insurance proceeds are available or adequate, commence and
complete the Restoration of the Demised Premises as nearly as
is possible to the value, condition and character of the
Demised Premises immediately before such casualty, all in
accordance with plans and specifications submitted to and
approved in writing by Landlord. The Restoration of the
Demised Premises and, subject to Section 18.2 hereof, the
disposition of any insurance proceeds resulting from such
casualty shall be in accordance with and subject to the terms
and conditions of section 19.2(a)(i) of this Lease.

- 30 -

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM INDEX NO. 652246/2018

NYSCEF DOC. NO. 2 Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 36 of 64 PageID #:49 RECEIVED NYSCEF: 05/08/2018

DFF/10-29-85
0725R

Landlord and Mortgagee, demonstrating that as of a then reason-
ably current date (and in the event of a Taking or casualty, a
date before such Taking or casualty) the fair market value of
the Exchange Property is at least equal to that of the Demised
Premises without, in either instance, taking into account the
existence of this Lease,

(D) Certificate from the chief financial
officer of CPS, demonstrating that CPS's Gross Sales (as defined
herein) from the Exchange Property for the preceding three (3)
years were at least equal to the Gross Sales from the Demised
Premises for the same period, accompanied by a letter from an
Approved Independent Auditor stating that it has reviewed such
statements of Gross Sales and agrees with the amounts set forth
therein, or, in the case of Exchange Property that has less than
a three year operating history, demonstrating that the square
footage devoted to sales in the Exchange Property is at least
equal to such square footage in the Demised Premises accompanied
by projections by an independant real estate consulting firm
such as Real Estate Research Corporation or the equivalent
showing that Gross Sales from the Exchange Property for any
future portion of such three (3) year period will, when combined
with Gross Sales from any past portion of such three (3) year
period during which operations were conducted, at least equal
Gross Sales from the Demised Premises for the immediately pre-
ceding three (3) years; provided, however, that the Mortgagee's
consent shall be required in the case of Exchange Property that
has less than a three year operating history and no standard of
reasonableness shall be applicable to the Mortgagee's decision
in such regard.  In the event that  Mortgagee shall not consent
in the case of such Exchange Property, Landlord and Tenant
acknowledge and agree that the Lease shall remain in full force
and effect.

(E) Evidence that the Exchange Property is
owned in fee simple by Tenant or an affiliate of Tenant and is
not subject to any mortgages, deeds of trust, security agree-
ments or other instruments securing the repayment of any debt
or the performance of any obligation or undertaking,

(F) Certificate from the president or a vice
president of CPS to the effect that the Exchange Property
complies with all Legal Requirements and its condition and
intended use do not violate any covenant, restriction or agree-
ment affecting the Exchange Property,

(G) Certificate from the president or a vice
president of CPS to the effect that the Exchange Property and
the operation thereof will be in compliance with this Lease at
the time of the exchange,

(H) Certificate from the president or a vice
president of CPS to the effect that any operating agreement
covering the Exchange Property is in full force and effect and

- 32 -

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM INDEX NO. 652246/2018

NYSCEF DOC. NO. 2
Case 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 37 of 64 PageID #:50
RECEIVED NYSCEF: 05/08/2018

DFF/10-29-85
0725R

(180) days after the giving of the notice described in (1)
above at the office of Beneficiary.

(b) If Landlord or Mortgagee disagrees with the certi-
fication of Gross Sales submitted pursuant to paragraph a(ii)(D)
above, Landlord or Mortgagee may audit the records of Tenant and
CPS with respect to such Gross Sales, and, if such audit shall
reveal that the Gross Sales from the Exchange Property do not
meet the requirements of paragraph (a)(ii)(D), Landlord shall
not be obligated to accept the exchange, if the results of such
audit together with notice of such non-acceptance are delivered
to Tenant within sixty (60) days of the delivery by Tenant to
Landlord of all of the items specified in (a)(i) and (a)(ii)
hereof. If the results of such audit reveal that the require-
ments of paragraph (a)(ii)(D) have been met, then Landlord, by
notice to Tenant given within said sixty (60) day period, may
extend the date on which the exchange is to occur under para-
graph (a) for an additional sixty (60) days and extend the date
by which the Landlord must exercise its rights under paragraph
(d) for an additional sixty (60) days. If Landlord notifies
Tenant of its non-acceptance of such sales certification and if
such audit was not performed by an Approved Independent Auditor,
Tenant, within fifteen (15) days after receipt thereof may
elect, at its expense, by notice to Landlord, to employ an
Approved Independent Auditor to conduct a second audit, and
Landlord and Tenant agree to be bound by the results thereof if
such results are delivered to Landlord within sixty (60) days
of Tenant's notice to Landlord. If the results of such second
audit reveal that the requirements of paragraph (a)(ii)(D) have
been met, then Landlord may extend the date on which the
exchange is to occur under paragraph (a) for an additional sixty
(60) days from the delivery of the results of such second audit
and may extend the date by which Landlord must exercise its
rights under paragraph (d) for an additional sixty days from
the delivery of the results of such audit.

(c) Landlord agrees that it will secure the
release of any Mortgage upon compliance by Tenant with the
foregoing terms and conditions provided that Mortgagee shall be
entitled to a mortgage lien on the Exchange Property having at
least the same priority and on the same terms and conditions as
the Mortgage.

(d) Notwithstanding compliance with the foregoing
terms and conditions, Landlord may notify Tenant in writing
within ninety (90) days after receipt of the items required by
subsections (a)(i) and (a)(ii) of this section 19.4 that Land-
lord declines to accept such exchange and in such event, pro-
vided that all terms and conditions necessary for such exchange

- 34 -

DFF/10-29-85
0725R


have been satisfied, Tenant shall have the right to terminate
this Lease by giving Landlord written notice to that effect
within thirty (30) days after receipt of Landlord's notice
declining to accept such exchange. Such right to terminate
this Lease shall expire if Tenant fails to give notice of
termination within said thirty (30) day period.

        20.  Events of Default; Termination.  If any one or
more of the following events (herein called "Events of Default")
shall occur:

        (a) if Tenant shall default in the due and
punctual payment of any Basic Rent, Percentage Rent, additional
rent or other sum payable to Landlord hereunder when the same
shall have become due and payable and such default shall con-
tinue for more than ten (10) days after written notice thereof
from Landlord; or

        (b) if Tenant shall default in the due performance
or observance of any of the terms of section 9 or 18 and such
default shall continue for more than ten (10) days after written
notice thereof from Landlord; or

        (c) if Tenant shall default in the due performance
or observance of any of the terms hereof other than those
referred to in the foregoing subparagraphs (a) and (b) and such
default shall continue for more than thirty (30) days after
written notice thereof from Landlord, or if such default shall
not be susceptible to cure within thirty (30) days, Tenant fails
either to commence to remedy such default within thirty (30)
days or thereafter diligently to prosecute the cure thereof to
completion with due diligence and without delay; or

        (d) if an Event of Default on the part of Tenant
shall. exist under any Leases other than this Lease; or

        (e) if Tenant shall make a general assignment for
the benefit of creditors, or shall file any voluntary petition
seeking relief, under the federal bankruptcy law or similar
state insolvency law, or shall consent or acquiesce in the
appointment of any trustee or receiver of Tenant or substan-
tially all of its assets; or

        (f) if a petition is filed against Tenant seeking
dissolution or liquidation of substantially all of Tenant's
assets or similar relief under any present or future statute,
law or regulation, and Tenant shall fail timely to deny or
contest the material allegations of a petition against it for
any such relief, or its directors or a majority in interest of

DFF/10-29-85
0725R

its stockholders, or if a partnership its partners, shall take
any action involving or calculated to result in the dissolution
of Tenant or the liquidation of substantially all of Tenant's
assets; or if, within sixty (60) days after the commencement of
any proceedings against Tenant seeking the dissolution of Tenant
or the liquidation of substantially all of Tenant's assets or
similar relief under any present or future statute, law or
regulation, liquidation or similar relief in a proceeding to
which any of the events referred to in subdivision (f) relates,
such proceeding shall not have been dismissed, or such petition
denied or such order vacated, as the case may be, or if, within
sixty (60) days after the appointment, without the consent or
acquiescence of Tenant, of any trustee, receiver or liquidator
of Tenant or of all or substantially all of its assets for the
purpose of the dissolution of Tenant or the liquidation of
substantially all of Tenant's assets, such appointment shall
not have been vacated; or

                              (g) if CPS shall avail itself or be subject
to any of the events described in paragraphs (e) and (f) above;

then and in any such event Landlord at any time thereafter may
(i) without further notice terminate this Lease, whereupon the
Demised Term of this Lease shall expire and terminate by limi-
tation (subject to the provisions of section 24 relating to the
survival of Tenant's obligations)  and all rights of Tenant
under this Lease shall cease and/or (ii) pursue such other
remedies as are available to Landlord at law or in equity on
account of such Event of Default.  All costs and expenses
incurred by or on behalf of Landlord, including, without
limitation, reasonable attorneys' fees and expenses, occasioned
by any default by Tenant under this Lease shall constitute
additional rent hereunder.  Anything to the contrary contained
in this section 20 notwithstanding, if an Event of Default
occurs under subsection (c) hereof which (i) is not a material
default, (ii) is not an event which, if not cured, will consti-
tute a default under a Mortgage, (iii) cannot result in Landlord
being subject to any civil liability as to which Tenant has not
posted adequate security or any criminal liability, and (iv)
cannot result in the Demised Premises or any rent therefrom or
any part thereof or interest therein being in imminent danger
of being sold, encumbered, forfeited or lost, then, in such
event, Landlord shall not be entitled to terminate this Lease,
but shall be entitled to pursue any other remedy available here-
under or at law or in equity, including, without limitation,
its rights under section 31 hereof and its right to maintain an
action for damages.

DFF/10-29-85
0725R

          21.   Repossession, etc., by Landlord. At any time after
the termination of the Demised Term of this Lease pursuant to
section 20, Landlord may enter upon and repossess the Demised
Premises by force, summary proceedings, ejectment or otherwise,
and may remove Tenant and all other persons and any and all
property therefrom.  Landlord shall be under no liability for
or by reason of any such entry, repossession or removal.

          22.   Reletting. After the termination of the Demised
Term of this Lease pursuant to section 20, Landlord shall use
commercially reasonable efforts to relet the Demised Premises
or any part thereof for the account of Tenant, in the name of
Tenant or Landlord or otherwise for such term or terms (which
may be greater or less than the period which would otherwise
have constituted the balance of the Demised Term of this Lease)
and on such conditions (which may include concessions and tenant
improvement allowances) and for such uses as Landlord, in its
uncontrolled discretion, may determine, and may collect and
receive the rents therefor; provided, however, that Landlord
shall be under no duty to relet the Demised Premises for less
than the fair market rental value thereof or to relet the
Demised Premises under any lease which is unacceptable to Land-
lord in the reasonable exercise of its judgment or unacceptable
to Mortgagee. Further, Tenant agrees that Landlord's duty to
relet under this section 22 shall be limited by and subject to
the right of Mortgagee to exercise its rights under the Mort-
gage, the exercise of such rights being an event over which the
Landlord has no control. In addition, any attempt by Landlord
to relet the Demised Premises or the actual reletting of the
Demises Premises shall not constitute a waiver by Landlord of
its rights and remedies under this Lease, and Tenant shall
remain subject to and liable for all of the terms and conditions
hereof.  Landlord shall not be responsible or liable for any
failure to collect any rent due upon any such reletting.

          23.  [DELETED]

          24.  Survival of Tenant's Obligations; Damages.

          24.1.   Termination of Lease Not to Relieve Tenant
of Obligations.  No termination of the Demised Term of this
Lease pursuant to section 20, and no repossession of the Demised
Premises or any part thereof pursuant to section 21 or otherwise
shall relieve Tenant of its liability and obligations under this
section 24, all of which shall survive any such termination or
repossession.

          24.2.   Current Damages.  In the event of any such
termination during the Demised Term, Tenant will pay to Landlord

- 37 -

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM INDEX NO. 652246/2018

NYSCEF DOC. NO. 2 Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 41 of 64 PageID #:54 RECEIVED NYSCEF: 05/08/2018

DFF/10-29-85
0725R

the Basic Rent, Percentage Rent, and all additional rent and
other sums required to be paid by Tenant, including, without
limitation, the Impositions, up to the time of such termination,
and thereafter Tenant until the end of what would have been the
Demised Term of this Lease in the absence of such termination,
and whether or not the Demised Premises or any part thereof
shall have been relet, shall be liable to Landlord for, and
shall pay to Landlord as and for liquidated and agreed current
damages for Tenant's default (it being agreed that it would be
impracticable or extremely difficult to fix the actual damages):

(a) the Basic Rent, Percentage Rent, and all
additional rent and other sums which would be payable under this
Lease by Tenant for what would be the then unexpired Demised
Term of this Lease in the absence of such termination, less

(b) the net proceeds, if any, of any relet-
ting effected for the account of Tenant pursuant to sections 22
and 23, after deducting from such proceeds all reasonable costs
and expenses incurred in connection with such reletting, includ-
ing, without limitation, all repossession costs, brokerage com-
missions, legal expenses, reasonable attorneys' fees and
expenses, alterations and/or repair costs, tenant allowances
and expenses of preparation for such reletting.

Tenant shall pay such current damages monthly on the days on
which the Basic Rent would have been payable under this Lease
in the absence of such termination, and Landlord shall be
entitled to recover the same from Tenant on each such day.

24.3. Final Damages. At any time after any
termination referred to in section 20, whether or not Landlord
shall have collected any current damages as aforesaid, Landlord
shall be entitled to recover from Tenant and Tenant will pay to
Landlord, on demand, as and for liquidated and agreed final
damages for Tenant's default and in lieu of all current damages
described in section 24.2 beyond the date of such demand (it
being agreed that it would be impracticable or extremely dif-
ficult to fix the actual damages), an amount equal to the
excess, if any, of

(a) the Basic Rent, Percentage Rent, and
additional rent and other sums which would be payable under
this Lease from the date of such demand (or, if it be earlier,
from the date to which Tenant shall have satisfied in full its
obligations under section 24.2 to pay current damages) for what
would be the then unexpired Demised Term of this Lease in the
absence of such expiration or termination, discounted at the

DFF/10-29-85
0725R

rate of eight percent (8%) per annum, compounded semi-annually, to its then present worth, over

       (b) the fair net rental value of the Demised Premises for the same period.

If any statute or rule of law shall validly limit the amount of such liquidated final damages to less than the amount above agreed upon, Landlord shall be entitled to such lesser amount allowable under such statute or rule of law.

       24.4. <u>Percentage Rent</u>. For purposes of computing damages, the Percentage Rent payable with respect to each Lease Year following termination (including the Lease Year during which such termination shall take place) shall be conclusively presumed to be equal to the average Percentage Rent payable with respect to the two complete Lease Years preceding termination, or, if such termination shall take place before the expiration of the twelfth Lease Year, the Percentage Rent payable for the eleventh Lease Year.

      25. <u>Tenant's Waiver of Statutory Rights</u>. In the event of any expiration or termination of the Demised Term of this Lease pursuant to section 20 or any repossession of the Demised Premises pursuant to section 21, Tenant, so far as permitted by law, hereby expressly waives (a) any right of redemption, re-entry or repossession, (b) any right to a trial by jury in the event of summary proceedings and (c) any right to a second or subsequent trial of any action of ejectment or similar suit, action or proceeding other than any right to a new trial granted by a court for cause. As used herein the word "re-entry" is not limited to its technical or common law meaning.

      26. <u>Assignment of Landlord's Interest</u>. Landlord may at any time and from time to time assign, by way of security or otherwise, any or all of the rights, in whole or in part, of Landlord under this Lease, including any or all Basic Rent, Percentage Rent, additional rent or other sums payable under this Lease and any or all of the claims, rights, powers, privileges and remedies of Landlord under this Lease. No such assignment shall release Landlord from any of its obligations under this Lease or constitute an assumption of any such obligations on the part of the assignee. From and after any such assignment, the assignee may enforce any and all of the terms of this Lease, may exercise any and all of Landlord's claims, rights, powers, privileges and remedies hereunder, and shall be entitled to the benefit of any and all of Landlord's rights (including, without limitation, rights of indemnification and rights to reimbursement of costs and expenses), privileges and

DFF/10-29-85
0725R

immunities hereunder, all to the extent so assigned, as though
the assignee had been named as Landlord herein. All the rights
and interests of the assignee herein shall be terminated upon
the termination of such assignment in the manner specified in
the instrument effecting such assignment.

27. <u>Surrender of Demised Premises, etc.</u> Subject to
the provisions of section 14 hereof, Tenant, upon any expiration
or earlier termination of this Lease for any reason whatsoever
(other than a termination of this Lease pursuant to section 19),
will peaceably vacate, yield up and surrender to Landlord the
Demised Premises, in good order, condition and repair pursuant
to the provisions of sections 14 and 19. No surrender to Land-
lord of the Demised Premises or any part thereof or any interest
therein by Tenant at any time other than the expiration of the
Demised Term shall be valid or effective unless it be in writing
and unless agreed to and accepted in writing by Landlord. No
act by any representative or agent of Landlord, other than such
a written agreement and acceptance by Landlord, shall constitute
or be deemed an acceptance of any such surrender.

28. <u>No Merger of Title</u>. There shall be no merger of
this Lease or of the leasehold estate created by this Lease with
the fee estate in the Demised Premises or any part thereof by
reason of the fact that the same person, firm, corporation or
other entity may acquire or own or hold directly or indirectly
(a) this Lease or the leasehold estate created by this Lease or
any interest in this Lease or in any such leasehold estate and
(b) the fee estate in the Demised Premises or any part thereof
or any interest in such fee estate, and no such merger shall
occur unless and until all corporations, firms and other enti-
ties, including Mortgagees, having any interest in (x) this
Lease or the leasehold estate created by this Lease or any
interest in this Lease or in any such leasehold estate and (y)
the fee estate in the Demised Premises or any part thereof or
any interest in such fee estate, shall join in a written instru-
ment effecting such merger and shall duly record the same.

29. <u>Assignment and Subletting</u>. Anything to the con-
trary contained in this section 29 notwithstanding, no assign-
ment, transfer or subletting and no grant of any license as
provided for in this section shall be effective or be permitted
hereunder if an Event of Default shall have occurred and be
continuing hereunder or if any consent or approval required
under the Operating Agreement for the action in question has
not been obtained and a copy thereof furnished to Landlord.

(a) Except as provided in paragraphs (b) and (c)
of this section 29 and unless Tenant shall first agree in writ-

- 40 -

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM   INDEX NO. 652246/2018

NYSCEF DOC. NO. 2   Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 44 of 64 PageID #:57   RECEIVED NYSCEF: 05/08/2018

DFF/10-29-85
0725R

ing to pay the Maximum Rent after the tenth (10th) Lease Year
for the remainder of the Demised Term, Tenant shall not assign
or transfer this Lease or sublet all or any part of the Demised
Premises without the prior written consent of Landlord and
Mortgagee, such consents not to be unreasonably withheld.    If
Tenant agrees in writing to pay the Maximum Rent for the
remainder of the Demised Term after the tenth (10th) Lease Year
(in which event Tenant shall no longer be obligated to pay
Percentage Rent under section 3.2 hereof), Tenant shall have
the right at any time and from time to time, to assign or
transfer this Lease and sublet all or any part of the Demised
Premises without the consent of Landlord or Mortgagee; provided,
however, that such assignment or subletting does not violate
the terms and conditions of the Operating Agreement.

        (b)    Tenant may grant licenses to concessionaires
or licensees and sublease space for the operation of leased
departments within Tenant's department store located on the
Demised Premises without the consent of Landlord or Mortgagee.

        (c)    The consent of Landlord or Mortgagee shall
not be required for any assignment or transfer of this Lease at
any time or from time to time, whether by operation of law or
voluntary assignment, to another corporation or entity which (i)
shall acquire or succeed to all or substantially all of the
assets, business and good will of Tenant and CPS, (ii) immedi-
ately following such assignment or transfer shall have a net
worth equal to or in excess of the net worth of CPS immediately
prior thereto and in no case shall such net worth be less than
One Hundred Forty-Five Million Dollars, ($145,000,000), as
evidenced by financial statements of CPS and such transferee
delivered to Landlord not later than thirty (30) days after
such transfer prepared in accordance with generally accepted
accounting principles consistently applied and certified by
independent certified public accountants, and (iii) shall
expressly assume, by instrument, in form and content satisfac-
tory to Landlord, the obligations of Tenant hereunder, whether
accrued or accruing prior to or after the date of such assign-
ment or transfer; and such assignment or transfer shall operate
to release and discharge Tenant from any and all liability here-
under, whether accrued or accruing, prior to or after the date
of such assignment.    The foregoing right to assign or transfer
this Lease without the consent of Landlord or Mortgagee shall
inure to the benefit of each successive assignee or transferee
under this paragraph (c) and any such assignee or transferee,
upon making a further assignment of this Lease to a business
successor in compliance with the foregoing provisions of this
paragraph (c), shall thereupon be released from any further
liability or obligation hereunder, as hereinabove provided.

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM INDEX NO. 652246/2018

NYSCEF DOC. NO. 2 Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 45 of 64 PageID #:58 RECEIVED NYSCEF: 05/08/2018

DFF/10-29-85
0725R

(d)  The consent of Landlord or Mortgagee shall not be required for any assignment or transfer of this Lease or any subletting at any time or from time to time, to CPS or an affiliate of CPS or, provided CPS or such affiliate shall operate the business conducted in the Demised Premises under the name "Carson Pirie Scott & Co." or "Carson's" or such other name as is permitted under the provisions of section 11.2 and shall have the use and benefit of Tenant's and CPS's good will, and provided that Tenant and CPS shall remain liable on all of their obligations under this Lease.

(e)  Except as expressly provided to the contrary in paragraph (c) of this Article no assignment, transfer or subletting and no grant of any license shall release Tenant or any guarantor of Tenant from any of its obligations under this Lease.

30.  <u>Consents and Approvals</u>.  Whenever the Landlord's consent or approval is required or requested hereunder, Landlord agrees that such consent or approval will not be unreasonably withheld; provided, however, that the Landlord shall be entitled to withhold its consent or approval as to any matter which requires the consent or approval of Mortgagee under the terms of the Mortgage if Mortgagee refuses to give such consent or approval.  Whenever the Tenant's consent or approval is required or requested hereunder, Tenant agrees that such consent or approval will not be unreasonably withheld.

31.  <u>Right of Landlord to Perform, etc</u>.  Regardless of whether it is then an Event of Default, if Tenant shall fail to make any payment or perform any act required to be made or per-formed hereunder, Landlord, without notice to or demand upon Tenant in an emergency (as determined by Landlord) and (subject to section 10 relating to permitted contests) ten (10) days following notice of such failure to Tenant in non-emergency situations, and if Tenant has failed to cure such failure fol-lowing notice thereof, and without waiving or releasing any obligation or default, may (but shall be under no obligation to) at any time thereafter make such payment or perform such act for the account and at the expense of Tenant, and may enter upon the Demised Premises for such purpose and take all such action thereon as, in such Landlord's reasonable opinion, may be necessary or appropriate therefor.  No such entry shall consti-tute or be deemed an eviction of Tenant.  All sums so paid by Landlord and all costs and expenses (including, without limita-tion, reasonable attorneys' fees and expenses) so incurred, together with interest thereon at the Default Rate from the date of payment or incurring, whichever is earlier, shall constitute

Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 46 of 64 PageID #:59

DFF/10-29-85
0725R

additional rent hereunder and shall be paid by Tenant to Land-
lord on demand.

32. Estoppel Certificate. Tenant will execute,
acknowledge and deliver to Landlord, within fifteen (15) days
of a request by Landlord, and Landlord will execute, acknowledge
and deliver to Tenant, promptly upon request by Tenant, a cer-
tificate executed by an authorized officer of Tenant or Land-
lord, as the case may be, certifying (a) that this Lease is
unmodified and in full force and effect (or, if there have been
modifications, that this Lease is in full force and effect, as
modified, and stating the modifications); (b) that the Tenant
has accepted possession of the Premises, and the date on which
the Demised Term commenced and will expire; (c) as to the dates
to which the Basic Rent, Percentage Rent, and any additional
Rent and other charges arising hereunder have been paid; (d) as
to the amount of any prepaid rent or any credit due to the
Tenant hereunder; (e) as to whether, to the best of such party's
knowledge, information and belief, the requesting party is then
in default in performing any of its obligations hereunder (and,
if so, specifying the nature of each such default); and (f) as
to any other fact or condition reasonably requested by the
requesting party; and acknowledging and agreeing that any
statement contained in such certificate may be relied upon by
the requesting party and any such other addressee.

33. No Waiver, etc., by Landlord. No failure by
Landlord to insist upon the strict performance of any term
hereof or to exercise any right, power or remedy upon a breach
thereof, and no acceptance of full or partial rent during the
continuance of any such breach, shall constitute a waiver of
any such breach or of any such term. No waiver of any breach
shall affect or alter this Lease, which shall continue in full
force and effect with respect to any other then existing or
subsequent breach. No waiver of any term of this Lease shall
be valid unless reduced to writing and signed by the party
against which enforcement of the waiver is sought.

34. Right to Enjoin. In addition to the other reme-
dies provided for in this Lease, Landlord shall be entitled to
the restraint by injunction of the violation or attempted or
threatened violation by Tenant of any of the terms, covenants,
conditions, provisions or agreements of this Lease.

35. Remedies, etc., Cumulative. Each right, power
and remedy of Landlord provided for in this Lease or now or
hereafter existing at law or in equity or by statute or other-
wise shall be cumulative and concurrent and shall be in addition
to every other right, power or remedy provided for in this Lease

Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 47 of 64 PageID #:60

DFF/10-29-85
0725R

or now or hereafter existing at law or in equity or by statute
or otherwise, and the exercise or beginning of the exercise by
Landlord of any one or more of the rights, powers or remedies
provided for in this Lease or now or hereafter existing at law
or in equity or by statute or otherwise shall not preclude the
further exercise thereof or the simultaneous or later exercise
by Landlord of any or all such other rights, powers or remedies.

36.  Condition of Title and the Demised Premises.
Landlord has made no warranties, representations or promises,
expressed or implied, with respect to the Demised Premises or
with respect to the Improvements or to any part thereof, except
those contained herein.  Tenant has agreed to accept the
Demised Premises in "as is" condition and the taking of posses-
sion of the Demised Premises by Tenant shall be conclusive
evidence that the Demised Premises are in good and satisfactory
condition and acceptable to Tenant.  Landlord has made no
warranties, representations or promises, express or implied,
regarding the condition or state of title to the Demised
Premises or regarding the compliance of the Demised Premises
with any Legal Requirements or with the requirements of any
contract, agreement or any other instrument relating to or
affecting the Demised Premises.

37.  Exhibition.  Subject to the exercise by the
Tenant of its options under section 40 hereof, Landlord shall
be entitled to exhibit the Demised Premises during business
hours for the purpose of selling or mortgaging Landlord's
interest under this Lease, and Landlord shall be entitled to
attach to the Demised Premises a notice or notices advertising
the Demised Premises for letting during a period of one hundred
eighty (180) days prior to the expiration of the Demised Term.
Landlord shall not unreasonably interfere with the Tenant's
business conducted by Tenant on the Demised Premises during
such exhibition.

38.  Inspection.  After reasonable notice to Tenant,
Landlord and Mortgagee and its and their agents shall be en-
titled to visit and inspect the Demised Premises during business
hours after reasonable notice to Tenant, but shall be under no
obligation to make any visit or inspection.  Landlord shall
indemnify Tenant against loss or damage to property or person
resulting directly from such inspection and shall not unreason-
ably interfere with Tenant's business conducted on the Demised
Premises during such inspection.

39.  Subordination; Attornment and Nondisturbance.

39.1.  Subordination of Lease; Nondisturbance.  Tenant
shall, promptly upon its receipt of a written demand therefor

- 44 -

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM    INDEX NO. 652246/2018

NYSCEF DOC. NO. 2    Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 48 of 64 PageID #:61    RECEIVED NYSCEF: 05/08/2018

DFF/10-29-85
0725R

from Landlord or the Mortgagee under any Mortgage becoming effective at or after the entry into this Lease by the parties hereto, subject and subordinate the Tenant's leasehold estate hereunder in and to so much of the Demised Premises as is covered by such Mortgage, to the lien, operation and effect thereof (and of each renewal, modification, consolidation, replacement or extension thereof), by executing and delivering to such Mortgagee such subordination agreement and/or other instrument in recordable form to effect the same as such Mortgagee may reasonably require; provided, that the Tenant shall be entitled to condition its entry into such subordination agreement or other instrument upon such Mortgagee's having executed and delivered to the Tenant an instrument in recordable form (which form such Mortgagee shall be entitled to prepare, subject to its approval by the Tenant, which shall not unreasonably be withheld) under which such Mortgagee and the Tenant agree that, if such Mortgage is foreclosed or title to the Demised Premises is granted by deed in lieu of foreclosure, (a) this Lease shall nevertheless remain in full force and effect, and such Mortgagee and any purchaser at such foreclosure or any grantee under any deed in lieu thereof shall take no action to terminate this Lease except on the occurrence of an Event of Default, and (b) Tenant shall attorn to such Mortgagee and any purchaser at such foreclosure, or any grantee under any deed in lieu thereof all as if such foreclosure had not occurred.

39.2.  Subordination of Mortgage.  Anything contained in the provisions of this Lease to the contrary notwithstanding, any Mortgagee may at any time subordinate its Mortgage to the operation and effect of this Lease without obtaining the Tenant's consent thereto, and without giving notice thereof, and thereupon this Lease shall be deemed to be senior to such Mortgage without regard to their respective dates of execution, delivery and/or recordation among the appropriate land records, and thereafter, such Mortgagee shall have the same rights as to this Lease as it would have had were this Lease executed, delivered and recorded among the said land records before the execution and delivery of such Mortgage, and assigned by the Landlord to such Mortgagee as security.

40.  Tenant's Purchase Options.

40.1  General.  Tenant shall have the option to purchase the Aggregate Demised Premises at the end (the "Effective Date") of the tenth, fifteenth, twentieth, thirtieth, and fortieth Lease Years of the Demised Term.  Tenant shall give written notice to Landlord of the exercise of such option not less than twelve (12) months and not more than fifteen (15) months prior to the Effective Date.  Upon the giving of such

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM          INDEX NO. 652246/2018

NYSCEF DOC. NO. 2          Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 49 of 64 PageID #:62          RECEIVED NYSCEF: 05/08/2018

DFF/10-29-85
0725R

notice, unless the exercise of the option is cancelled pursuant
to clause (b) of section 40.2 or clause (f) of section 40.3,
Tenant shall be obligated to purchase and Landlord shall be
obligated to sell, the Demised Premises subject to the provi-
sions set forth hereinbelow.  The purchase price ("Purchase
Price") payable by Tenant shall be determined in accordance
with the provisions set forth in section 40.2 and shall be paid
to Landlord less the principal amount of any Permitted Mortgages
(as hereinafter defined) and less any other adjustments, all as
hereinafter provided, in federal reserve funds deposited in
Landlord's account at closing.  Closing ("Closing") shall take
place as of the Effective Date through an escrow established at
Chicago Title and Trust Company, Chicago, Illinois, the terms
and provisions of such escrow to be consistent with the terms
and provisions hereof.

          40.2  Calculation of Purchase Price.  The purchase
price for the Aggregate Demised Premises shall be the fair
market value of the Aggregate Demised Premises, without taking
into account the existence of this Lease or any of the Leases
and based on then current appraisal methods.  Tenant's notice
to Landlord exercising the option to purchase shall be accom-
panied by an appraisal, prepared by an appraiser who shall be a
member of the American Institute of Real Estate Appraisers of
the National Association of Realtors, Chicago, Illinois (the
"Institute"), familiar with the areas in which the Aggregate
Demised Premises are located, which shall state the opinion of
such appraiser as to the fair market value of the Aggregate
Demised Premises as of a date eighteen (18) months prior to the
Effective Date.  Within thirty (30) days after the receipt of
Tenant's notice and such appraisal, Landlord may, by notice to
Tenant, either accept the fair market value of the Aggregate
Demised Premises, as set forth in such appraisal, as the
Purchase Price for the Aggregate Demised Premises, or reject
such appraisal in which event Landlord may obtain no later than
one hundred eighty (180) days prior to the Effective Date, at
Landlord's expense, and submit to Tenant an appraisal by an
appraiser who shall be a member of the Institute, such appraiser
having been selected by the President of the Institute, familiar
with the areas in which the Aggregate Demised Premises are
located, which appraisal shall state the opinion of such
appraiser as to the fair market value of the Aggregate Demised
Premises as of the date of the appraisal.  Tenant shall then
have the option, to be exercised by giving written notice to
Landlord within five (5) days following receipt of Landlord's
appraisal, to (a) accept, as the Purchase Price for the Aggre-
gate Demised Premises, the fair market value of the Aggregate
Demised Premises as determined by the higher of the two
appraisals, or (b) cancel the exercise of its option to purchase

- 46 -

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM INDEX NO. 652246/2018
NYSCEF DOC. NO. 2 Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 50 of 64 PageID #:63 RECEIVED NYSCEF: 05/08/2018

DFF/10-29-85
0725R

the Aggregate Demised Premises as of the Effective Date, or (c)
request a third appraisal. If Tenant requests a third
appraisal, then an appraiser who shall be a member of the
Institute, mutually acceptable to Landlord and Tenant, and
familiar with the areas in which the Aggregate Demised Premises
are located, shall promptly make an appraisal of the fair market
value of the Aggregate Demised Premises, at Tenant's expense,
and shall state, in his opinion, such fair market value thereof,
as of the date of such appraisal in accordance with the provi-
sions of this section 40. If Landlord and Tenant cannot agree
on such third appraiser within ten (10) days following Land-
lord's receipt of a request for a third appraisal, then the
third appraiser shall be selected by the President of the
Institute at the request of either party. Such appraisal shall
be delivered to Landlord and Tenant at least thirty (30) days
prior to the Effective Date. Upon receipt of the third
appraisal by the parties hereto, the Purchase Price for the
Aggregate Demised Premises shall be determined as follows: (i)
if the third appraisal provided for hereunder is higher than
either of the first two appraisals provided for in this section
40, then the Purchase Price for the Aggregate Demised Premises
shall be the fair market value of the Aggregate Demised Premises
as determined by the higher of said first two appraisals; or
(ii) if the third appraisal is lower than the first two
appraisals provided for in this section 40, then the purchase
price for the Aggregate Demised Premises shall be the fair
market value of the Aggregate Demised Premises as determined by
the lower of said first two appraisals; or (iii) if the third
appraisal is greater than the lower of said first two appraisals
and less than the higher of said first two appraisals, then the
Purchase Price for the Aggregate Demised Premises shall be the
fair market value of the Aggregate Demised Premises as deter-
mined by the third appraisal. If the Purchase Price determined
pursuant to the foregoing with respect to the purchase option
the Effective Date of which is the expiration of the tenth
(10th) Lease Year, is less than the lesser of (i) $75,000,000,
or (ii) the outstanding principal balance and accrued interest
which will exist on the Effective Date on the Mortgage existing
on the date of the commencement of this Lease (the "Floor
Amount"), then the Purchase Price shall be the Floor Amount.

                    40.3  Other Terms and Conditions.  Following
exercise of the option by Tenant, the following terms and
conditions, in addition to those set forth above, shall apply:

                         (a) Beneficiary being the benefi-
                    ciary of the Illinois and Indiana land trusts
                    (collectively "Land Trusts" and individually
                    "Land Trust"), holding fee title to the

                              - 47 -

DFF/10-29-85
0725R

Aggregate Demised Premises, agrees to assign
to Tenant at Closing by separate instrument
for each Land Trust the entire beneficial
interest and power of direction in such Land
Trusts free and clear of all liens and
encumbrances, as to which free and clear
condition Beneficiary will represent and
warrant in the instrument of assignment.
Beneficiary will further represent and
warrant in each such instrument of assignment
that such instrument is good and sufficient
in all respects to vest title to the benefi-
cial interest and power of direction assigned
thereby in Tenant.  At Closing, Beneficiary
will deliver to Tenant certificates of the
trustees holding title to the Land Trusts
certifying in each case that Beneficiary is
the sole beneficiary of each Land Trust and
holds the entire power of direction thereof,
that each such trustee is aware of no
assignment of or encumbrance on such benefi-
cial interest and power of direction or any
part thereof and that the list of instruments
appended to such certificate are the only
instruments signed by each such trustee as
trustee since taking fee title to the Demised
Premises.  In addition, at Closing, Benefi-
ciary will deliver to Tenant the customary
Uniform Commercial Code, judgment and tax
lien searches showing no liens or encum-
brances against the beneficial interest and
power of direction of the Land Trusts.

(b)  Any documentary stamp, trans-
fer, conveyance, transactions, or similar
taxes levied in connection with the foregoing
assignment of the beneficial interest and
power of direction in the Land Trusts shall
be paid by Tenant.

(c)  At Closing, title to the
Aggregate Demised Premises shall be good and
marketable subject only to (i) the Permitted
Exceptions, and (ii) Mortgages in an aggre-
gate amount of unpaid principal and accrued
interest not in excess of the Purchase Price
(the "Permitted Mortgages") with respect to
which Landlord has delivered to Tenant true
and correct copies of the note, mortgage and

- 48 -

Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 52 of 64 PageID #:65

DFF/10-29-85
0725R

all other allied documents not less than two
(2) years prior to any Effective Date. At
Closing Beneficiary shall represent and
warrant to Tenant by written instrument
delivered to Tenant that Landlord is not in
default under any of the Permitted Mortgages
and the amount of the unpaid principal and
accrued interest thereunder as of Closing.

(d)  At Closing, Tenant shall be
entitled to obtain at its expense an ALTA
Owner's Policy, Form B-1970 (or what is at
Closing the equivalent thereof if such Form
B-1970 is no longer in use) of Chicago Title
Insurance Company, or other title insurance
company designated by Tenant, dated the date
of the Closing, insuring Tenant in the amount
of the Purchase Price that the trustees hold-
ing title to the Aggregate Demised Premises
own good and marketable title thereto subject
only to the Permitted Exceptions, the Per-
mitted Mortgages, and the standard printed
exceptions to the Owner's Policy then in use,
including an exception(s) for matters which
would be removed by obtaining a current sur-
vey, such Owner's Policy to have attached
thereto the same endorsements as were
furnished Landlord at the time of Landlord's
purchase of the Aggregate Demised Premises
from Tenant.

(e)  At Closing, Beneficiary shall
convey to Tenant by good and sufficient Bill
of Sale free and clear of all liens and
encumbrances the personal property conveyed
to Landlord at the time of Landlord's pur-
chase of the Aggregate Demised Premises from
Tenant and any renewals or replacements
thereof made by Tenant from time to time
during the Demised Term less such parts or
portions thereof as shall have been aban-
doned, lost or destroyed during Tenant's
occupation and operation of the Aggregate
Demised Premises.

(f)  In the event that, following
the exercise by Tenant of its option to
purchase the Aggregate Demised Premises and
prior to Closing, the Aggregate Demised

DFF/10-29-85
0725R

Premises hereunder or any of the Demised
Premises under any of the Leases are des-
troyed or materially damaged by fire or
other casualty, or the whole or any part
thereof are taken through the exercise of
eminent domain or a petition to so condemn
is filed, Tenant shall have the option to
either (i) cancel the exercise of its option
to purchase the Aggregate Demised Premises
by giving Landlord written notice to that
effect not more than fifteen (15) days
following the date of such destruction,
damage, condemnation or receipt by Tenant of
notice as to the filing of such petition to
condemn, or (ii) proceed to Closing in which
event the Purchase Price shall not be reduced
but Landlord shall pay to Tenant all insur-
ance proceeds or condemnation awards received
by Landlord in connection therewith and
assign to Tenant all of its right, title and
interest in and to any such awards or pro-
ceeds not yet paid.

(g) At Closing, interest on the
Permitted Mortgages shall be prorated, pre-
paid interest being credited to Landlord and
interest accrued but unpaid being credited
to Tenant.

(h) At Closing, the interest of
Landlord under the Operating Agreements for
the Aggregate Demised Premises and all
insurance policies, certificates, licenses,
guaranties, warranties and the like covering
the Aggregate Demised Premises and assigned
to Landlord by Tenant shall be reassigned
(to the extent assignable) to Tenant by good
and sufficient instruments of assignment.

(i) At or prior to Closing, Land-
lord and Tenant will cooperate with each
other by the filing of such certificates,
reports or affidavits as may be required by
law to avoid withholding of a part of the
Purchase Price to satisfy income or other
tax requirements.

41. Liability of Beneficiary. If Beneficiary, or any
successor or assign, shall fail to perform any covenant, term

- 50 -

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM        INDEX NO. 652246/2018

NYSCEF DOC. NO. 2        Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 54 of 64 PageID #:67        RECEIVED NYSCEF: 05/08/2018

DFF/10-29-85
0725R

or condition of this Lease upon Landlord's part to be performed,
Tenant's sole recourse shall be against the right, title and
interest of Beneficiary in the land trust holding title to the
Demised Premises, the assets of such land trust and the rents
or other income from such property receivable by Landlord, sub-
ject, nevertheless, to the rights of any Mortgagee, and neither
Beneficiary nor any successor or assign of Beneficiary nor any
of the general partners, limited partners, shareholders,
officers or directors of Beneficiary or of any successor or
assign of Beneficiary, shall be personally liable hereunder.

     42.   Notices, etc.  All notices, demands, requests,
consents, approvals and other instruments under this Lease
shall be in writing and shall be deemed to have been properly
given if and when mailed by first class registered or certified
mail, return receipt requested, postage prepaid, addressed (a)
if to Tenant, at One South Street, Chicago, Illinois 60603, or
at such other address as Tenant may have designated by notice
to Landlord or (b) if to Landlord, at Suite 650, 502 Washington
Avenue, Towson, Maryland 21204, or at such other address as
Beneficiary may have designated by notice to Tenant.

     43.   Exculpation of Land Trustee.  This Agreement is
executed by Chicago Title and Trust Company, not personally but
as Land Trustee as aforesaid in the exercise of the power and
authority conferred upon and vested in it as such Trustee and
it is expressly understood and agreed that nothing herein shall
be construed as creating any liability in said Chicago Title
and Trust Company personally to perform any covenant either
express or implied herein contained, all such liability, if
any, being expressly waived by every person now or hereafter
claiming any right hereunder, and that any person claiming any
right hereunder shall look solely to the assets of the trust
for the enforcement of the agreements and covenants herein.

     44.   Miscellaneous.  If any term or provision of this
Lease or any application thereof shall be invalid or unenforce-
able, the remainder of this Lease and any other application of
such provision shall not be affected thereby.  This Lease shall
be deemed to be a contract governed by and to be construed and
enforced in accordance with the laws of the State of Illinois.
Neither this Lease nor any provision hereof may be changed,
waived, discharged or terminated orally, but only by an
instrument in writing signed by the party against which
enforcement of the change, waiver, discharge or termination is
sought.  Subject to the provisions of section 29 (relating to
subleases and assignments by Tenant, respectively), all the
terms and provisions of this Lease shall be binding upon and
inure to the benefit of Tenant, its successors and assigns, and

DFF/10-29-85
0725R

Landlord, its successors and assigns. The headings in this
Lease are for convenience of reference only and shall not limit
or otherwise affect the meaning hereof. This Lease may be
executed in several counterparts, each of which shall be an
original, but all of which shall constitute one and the same
instrument.

IN WITNESS WHEREOF, Landlord and Tenant have respec-
tively caused their corporate seals to be hereunto affixed and
these presents to be signed by their respective duly authorized
officers, as of the day and year first above written.

WITNESS or ATTEST:                    LANDLORD:

CHICAGO TITLE & TRUST COMPANY, as
trustee under a Trust Agreement
dated June 15, 1985 and known as
Trust No. 1085200,

By: _____
                    "Land Trustee"

SIX ANCHORS LIMITED PARTNERSHIP, a
Maryland limited partnership

By: DWT Venture, Incorporated, a
Maryland corporation, General
Partner

By: _____
                    "Beneficiary"

ATTEST:                               TENANT:

CPS REALTY, an Illinois general
partnership

By Carson Pirie Scott & Company, a
Delaware corporation, General
Partner

by: _____
                    , Vice President

- 52 -

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM INDEX NO. 652246/2018

NYSCEF DOC. NO. 2    Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 56 of 64 PageID #:69    RECEIVED NYSCEF: 05/08/2018

LINCOLN MALL

EXHIBIT A TO LINCOLN MALL LEASE

PARCEL 1:

LOT 2 IN LINCOLN MALL, BEING A SUBDIVISION OF PART OF THE SOUTH WEST 1/4 OF SECTION 22, TOWNSHIP 35 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

PARCEL 2:

THE RECIPROCAL AND NON-EXCLUSIVE EASEMENTS FOR INGRESS AND EGRESS, PARKING OF VEHICLES, PASSAGE AND ACCOMMODATION OF PEDESTRIANS, THE INSTALLATION, OPERATION, MAINTENANCE, REPAIR, REPLACEMENT, RELOCATION AND REMOVAL OF STORM AND SANITARY SEWERS, WATER LINES AND GAS MAINS, ELECTRICAL POWER LINES, TELEPHONE LINES AND OTHER UTILITY LINES, STORM WATER RETENTION BASIN, FIRE PROTECTION WATER STORAGE TANK AND PUMPHOUSE FACILITIES, THE CONSTRUCTION, RECONSTRUCTION, ERECTION AND MAINTENANCE OF COMMON FOUNDATIONS, FOOTINGS, SUPPORTS, CANOPIES, ROOFS, BUILDING AND OTHER OVERHANGS, AWNINGS, ALARM BELLS, SIGNS, LIGHTS AND LIGHTING DEVICES, UTILITY VAULTS AN DOTHER SIMILAR APPURTENANCES, AND FOR THE PURPOSE OF THE DEVELOPMENT AN DCONSTRUCTION OR RECONSTRUCTION OF IMPROVEMENTS, CREATED AND GRANTED AS APPURTENANCES TO THE AFOREDESCRIBED PARCEL 1, ALL CREATED, DEFINED AND LIMITED BY THAT CERTAIN RECIPROCAL CONSTRUCTION OPERATION AND EASEMENT AGREEMENT DATED MARCH 7, 1972 AND RECORDED ON MARCH 24TH 1972 AS DOCUMENT NUMBER 21846183 BY AND BETWEEN CHICAGO TITLE AND TRUST COMPANY, A CORPORATION OF ILLINOIS, AS TRUSTEE UNDER TRUST AGREEMENT DATED JUNE 4, 1971 AND KNOWN AS TRUST NUMBER 57420, CARSON PIRIE SCOTT AND COMPANY, A DELAWARE CORPORATION, J. C. PENNY PROPERTIES, INC., A DELAWARE CORPORATION, MONTGOMERY WARD DEVELOPMENT CORPORATION, A DELAWARE CORPORATION AND WIEBOLDT STORES, INC., AN ILLINOIS CORPORATION, IN, ON, OVER, UPON AN UNDER LOTS 1, 3, 4, 5 AND 6 IN LINCOLN MALL SUBDIVISION AFORESAID AS SHOWN ON THE PLAT PLAN ATTACHED TO SAID RECIPROCAL CONSTRUCTION OPERATION AND EASEMENT AGREEMENT

PARCEL 3:

THE RECIPROCAL AND NON-EXCLUSIVE EMTS FOR INGRESS AND EGRESS AND FOR THE INSTALLATION, OPERATION, MAINTENANCE, REPAIR, REPLACEMENT, RELOCATION AND REMOVAL OF STORM AND SANITARY SEWERS, WATER LINES AND GAS MAINS, ELECTRICAL POWER LINES, TELEPHONE LINES AND OTHER UTILITY LINES, CREATED AND GRANTED AS APPURTENANCES TO THE AFOREDESCRIBED PARCEL 1, ALL CREATED, DEFINED AND LIMITED BY THE CERTAIN TOTAL SITE AGREEMENT DATED MARCH 7, 1972 AND RECORDED MARCH 24, 1972 AS DOCUMENT 21846182 BY AND BETWEEN CHICAGO TITLE AND TRUST COMPANY, A CORPORATION OF ILLINOIS, AS TRUSTEE UNDER TRUST AGREEMENT DATED JUNE 4, 1971 AND KNOWN AS TRUST NUMBER 57420, CARSON PIRIE SCOTT AND COMPANY, A DELAWARE CORPORATION, MONTGOMERY WARD DEVELOPMENT CORPORATION, A DELAWARE CORPORATION, WIEBOLDT STORES, INC., AN ILLINOIS CORPORATION, AND CHICAGO TITLE AND TRUST COMPANY, A CORPORATION OF ILLINOIS, AS TRUSTEE UNDER TRUST AGREEMENT DATED JULY 30, 1971 AND KNOWN AS TRUST NUMBER 57855, IN, ON, OVER, UPON AND UNDER LOTS 1, 3, 4, 5, 8, 9, 10, 11 AND 12 IN LINCOLN MALL SUBDIVISION AFORESAID AS SHOWN ON THE PLOT PLAN ATTACHED TO THE SAID TOTAL SITE AGREEMENT.

EXHIBIT B TO LEASE
BETWEEN
SIX ANCHORS LIMITED PARTNERSHIP
AND
CPS REALTY PARTNERSHIP


BASIC RENT

| YEAR | LINCOLN MALL | NORTH RIVERSIDE | ORLAND SQUARE | SOUTHLAKE MALL | STRATFORD SQUARE | YORKTOWN | TOTALS |
|------|------|------|------|------|------|------|------|
| 1 | $1,821,148 | $1,157,857 | $1,388,263 | $758,249 | $1,811,121 | $1,911,773 | $7,167,631 |
| 2 | $1,841,948 | $1,188,625 | $1,334,911 | $773,714 | $1,831,717 | $1,958,714 | $7,313,629 |
| 3 | $1,188,765 | $1,256,335 | $1,428,515 | $823,338 | $1,897,877 | $2,875,887 | $7,782,629 |
| 4 | $1,288,482 | $1,349,232 | $1,548,167 | $897,317 | $1,196,536 | $2,262,346 | $8,482,188 |
| 5 | $1,283,481 | $1,454,385 | $1,644,357 | $953,869 | $1,278,879 | $2,482,989 | $9,889,888 |
| 6 | $1,299,153 | $1,472,862 | $1,664,435 | $964,786 | $1,286,396 | $2,432,248 | $9,119,388 |
| 7 | $1,379,646 | $1,563,269 | $1,767,561 | $1,824,478 | $1,366,899 | $2,582,947 | $9,684,688 |
| 8 | $1,464,984 | $1,659,964 | $1,876,892 | $1,887,646 | $1,458,599 | $2,742,714 | $11,292,999 |
| 9 | $1,555,458 | $1,762,471 | $1,992,795 | $1,155,823 | $1,548,177 | $2,912,683 | $18,917,999 |
| 10 | $1,588,864 | $1,789,684 | $1,933,118 | $1,128,438 | $1,494,848 | $2,824,565 | $18,571,881 |
| 11-15 | $1,518,146 | $1,711,137 | $1,934,753 | $1,121,382 | $1,495,317 | $2,827,265 | $18,688,888 |
| 16-28 | $1,595,626 | $1,887,994 | $2,844,267 | $1,184,856 | $1,579,958 | $2,987,299 | $11,281,888 |
| 21-25 | $1,889,326 | $2,858,136 | $2,318,853 | $1,343,543 | $1,791,559 | $3,387,384 | $12,788,661 |
| 26-38 | $1,889,326 | $2,858,136 | $2,318,853 | $1,343,543 | $1,791,559 | $3,397,384 | $12,781,181 |
| 31-35 | $1,951,792 | $2,211,564 | $2,588,576 | $1,449,333 | $1,932,627 | $3,654,187 | $13,669,999 |
| 36-48 | $2,136,999 | $2,421,428 | $2,737,857 | $1,586,861 | $2,116,815 | $4,888,947 | $14,999,999 |

| YEAR | LINCOLN MALL | NORTH RIVERSIDE | ORLAND SQUARE | SOUTHLAKE MALL | STRATFORD SQUARE | YORKTOWN | TOTALS |
|------|------|------|------|------|------|------|------|
| 11-15 | $1,789,599 | $1,937,136 | $2,198,286 | $1,269,489 | $1,692,812 | $3,288,678 | $12,888,888 |
| 16-28 | $1,788,832 | $2,817,858 | $2,281,548 | $1,322,384 | $1,763,346 | $3,334,839 | $12,499,999 |
| 21-25 | $2,865,765 | $2,348,786 | $2,646,595 | $1,533,966 | $2,845,481 | $3,867,486 | $14,499,999 |
| 26-38 | $2,393,439 | $2,711,991 | $3,866,488 | $1,777,285 | $2,369,937 | $4,498,949 | $16,888,888 |
| 31-35 | $2,778,898 | $3,147,846 | $3,559,215 | $2,862,928 | $2,758,819 | $5,281,182 | $19,588,888 |
| 36-48 | $3,285,498 | $3,632,131 | $4,186,786 | $2,388,292 | $3,174,622 | $6,881,271 | $22,588,888 |

| YEAR | AGGREGATE BASIC RENT | AGGREGATE MAXIMUM RENT | APPLICABLE PERCENTAGE |
|------|------|------|------|
| 11-15 | $18,688,888 | $12,888,888 | 4.88% |
| 16-28 | $11,288,888 | $12,588,888 | 3.88% |
| 21-25 | $12,788,888 | $14,588,888 | 3.88% |
| 26-38 | $12,788,888 | $16,988,888 | 3.88% |
| 31-35 | $13,788,888 | $19,588,888 | 3.88% |
| 36-48 | $15,888,888 | $22,588,888 | 3.88% |

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM INDEX NO. 652246/2018

NYSCEF DOC. NO. 2    Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 58 of 64 PageID #:71    RECEIVED NYSCEF: 05/08/2018

EXHIBIT C

LINCOLN MALL LEASE
Schedule of Leases

1. Lease by and between Chicago Title & Trust Company, as trustee under a Trust Agreement dated June 15, 1985 and known as Trust No. 1086200, and Six Anchors Limited Partnership, a Maryland limited partnership, as Landlord; and CPS Realty Partnership, an Illinois general partnership, as Tenant, of property at Yorktown Mall, Lombard, Illinois.

2. Lease by and between Chicago Title & Trust Company, as trustee under a Trust Agreement dated July 8, 1985 and known as Trust No. 1086600, and Six Anchors Limited Partnership, a Maryland limited partnership, as Landlord; and CPS Realty Partnership, an Illinois general partnership, as Tenant, of property at Stratford Square, Bloomingdale, Illinois.

3. Lease by and between Chicago Title & Trust Company, as trustee under a Trust Agreement dated June 15, 1985 and known as Trust No. 1086100, and Six Anchors Limited Partnership, a Maryland limited partnership, as Landlord; and CPS Realty Partnership, an Illinois general partnership, as Tenant, of property at Orland Park, Orland Park, Illinois.

4. Lease by and between Chicago Title & Trust Company, as trustee under a Trust Agreement dated June 15, 1985 and known as Trust No. 1085900, and Six Anchors Limited Partnership, a Maryland limited partnership, as Landlord; and CPS Realty Partnership, an Illinois general partnership, as Tenant, of property at North Riverside Mall, North Riverside, Illinois.

5. Lease by and between Lake County Trust Company, as trustee under a Trust Agreement dated June 15, 1985 and known as Trust No. 3501, and Six Anchors Limited Partnership, a Maryland limited partnership, as Landlord; and CPS Realty Partnership, an Illinois general partnership, as Tenant, of property at Southlake Mall, Merriville, Indiana.

DFF/10-11-85
0725R

EXHIBIT D

[DELETED]

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM    INDEX NO. 652246/2018

NYSCEF DOC. NO. 2    Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 60 of 64 PageID #:73    RECEIVED NYSCEF: 05/08/2018

## Exhibit E

## Schedule of Lease Years

| Lease Year | Commences | Ends |
|---|---|---|
| 11 | 2-4-96 | 2-1-97 |
| 12 | 2-2-97 | 1-31-98 |
| 13 | 2-1-98 | 1-30-99 |
| 14 | 1-31-99 | 1-29-00 |
| 15 | 1-30-00 | 2-3-01 |
| 16 | 2-4-01 | 2-2-02 |
| 17 | 2-3-02 | 2-1-03 |
| 18 | 2-2-03 | 1-31-04 |
| 19 | 2-1-04 | 1-29-05 |
| 20 | 1-30-05 | 1-28-06 |
| 21 | 1-29-06 | 2-3-07 |
| 22 | 2-4-07 | 2-2-08 |
| 23 | 2-3-08 | 1-31-09 |
| 24 | 2-1-09 | 1-30-10 |
| 25 | 1-31-10 | 1-29-11 |
| 26 | 1-30-11 | 1-28-12 |
| 27 | 1-29-12 | 2-2-13 |
| 28 | 2-3-13 | 2-1-14 |
| 29 | 2-2-14 | 1-31-15 |
| 30 | 2-1-15 | 1-30-16 |
| 31 | 1-31-16 | 1-28-17 |
| 32 | 1-29-17 | 2-3-18 |

Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 61 of 64 PageID #:74

| Lease Year | Commences | Ends |
|------------|-----------|------|
| 33 | 2-4-18 | 2-2-19 |
| 34 | 2-3-19 | 2-1-20 |
| 35 | 2-2-20 | 1-30-21 |
| 36 | 1-31-21 | 1-29-22 |
| 37 | 1-30-22 | 1-28-23 |
| 38 | 1-29-23 | 2-3-24 |
| 39 | 2-4-24 | 2-1-25 |
| 40 | 2-2-25 | 1-31-26 |

Exhibit F

## LINCOLN MALL LEASE

Schedule of Instruments Constituting Operating Agreements

Reciprocal Construction Operation and Easement Agree-
ment dated 3/7/72 and recorded 3/24/72 as Document
21846183 between Chicago Title and Trust Company, as
Trustee, Carson Pirie Scott and Company, J.C. Penney
Properties, Inc., Montgomery Ward Development Corpora-
tion and Wieboldt Stores, Inc. - Lincoln Mall Land.

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM    INDEX NO. 652246/2018

NYSCEF DOC. NO. 2    Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 63 of 64 PageID #:76    RECEIVED NYSCEF: 05/08/2018

DFF/10-11-85
0725R

EXHIBIT G

[DELETED]

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM          INDEX NO. 652246/2018

NYSCEF DOC. NO. 2    Case: 1:20-cv-03970 Document #: 1-1 Filed: 07/07/20 Page 64 of 64 PageID #:77          RECEIVED NYSCEF: 05/08/2018

#### EXHIBIT H

### Description of Existing Mortgages

#### Lincoln Mall Land

Mortgage dated 9/25/72 and recorded 9/29/72 as Document 22068851 made by Lincoln Cicero Corporation to H. F. Philipsborn and Company to secure a Note for $4,500,000, assigned to State of Wisconsin Investment Board by instrument recorded 12/28/73 as Document 22582329.

Financing Statement executed by Lincoln Cicero Corporation in favor of H. F. Philipsborn and Company, filed 9/29/72 as No. 72U54831, assigned to State of Wisconsin Investment Board by instrument filed 1/4/74 as No. 74U00470.

Assignment of Rents and Leases made by Lincoln Cicero Corporation to H. F. Philipsborn and Company and recorded 9/29/72 as Document 22068852, assigned to State of Wisconsin Investment Board by instrument recorded 12/28/73 as Document 22582329.