# EXHIBIT 4

FILED: NEW YORK COUNTY CLERK 05/08/2018 04:39 PM                INDEX NO. 652246/2018
NYSCEF DOC. NO. 5          Case: 1:20-cv-03970 Document #: 1-4 Filed: 07/07/20 Page 2 of 7 PageID #:131          RECEIVED NYSCEF: 05/08/2018

# EXHIBIT 4

## CORPORATE GUARANTY
(Lincoln Mall; Matteson, Illinois Property)

THIS CORPORATE GUARANTY (this "Guaranty") is executed to be effective as of August 5, 1998, by PROFFITT'S, INC., a Tennessee corporation (the "Guarantor").

WITNESSETH:

WHEREAS, Chicago Title & Trust Company, as Trustee ("Land Trustee") under a Trust Agreement dated June 15, 1985, and known as Trust No. 1085200 and Six Anchors Limited Partnership, a Maryland limited partnership currently known as Illinois Partners Limited Partnership, as beneficiary under the Trust, collectively as Landlord (the "Former Landlord"), and CPS Realty Partnership, an Illinois general partnership ("CPS Partnership"), as the Tenant, entered into a Lease dated October 31, 1985, relating to certain premises constituting a portion of the Lincoln Mall Shopping Center in Matteson, Illinois, as such premises are more fully described in said Lease (the "Original Lease");

WHEREAS, CPS Department Stores, Inc., a Delaware corporation ("Tenant"), is successor-in-interest to CPS Partnership as Tenant under the Original Lease;

WHEREAS, Tenant and Former Landlord have previously entered into an Amendment of Lease executed on February 1, 1994, to be effective as of August 1, 1993 (the "First Amendment");

WHEREAS, WEC 98C-5 LLC, a Texas limited liability company ("Landlord"), has purchased the property constituting the Demised Premises from the Former Landlord effective as of the date of this Guaranty and, in connection with the Landlord's purchase of such property, Landlord and Tenant have agreed to amend certain terms and provisions of the Lease as more fully set forth in that certain Second Amendment to Lease entered into as of even date herewith between Landlord and Tenant (the "Second Amendment"); and

WHEREAS, as a condition to Landlord's agreement to amend the Lease in accordance with the Second Amendment, the Guarantor has agreed to enter into this Guaranty.

NOW, THEREFORE, in consideration of and as an inducement for the Landlord's purchase of the Demised Premises and the granting, execution and delivery of the Second Amendment (the Original Lease, as amended by the First Amendment and the Second Amendment, is hereinafter called the "Lease"), and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged by the undersigned, Guarantor, intending to be legally bound, hereby guarantees to Landlord the full and prompt payment when due of all Basic Rent, additional rent and any and all other sums and charges payable by Tenant under the Lease, and the full, faithful and prompt performance and observance of all the covenants, terms, conditions, and agreements therein provided to be performed and observed by Tenant (collectively, the "Obligations"); and Guarantor does hereby become surety to Landlord for and with respect to all of the Obligations.

Guarantor hereby covenants and agrees to and with Landlord that if default shall at any time be made by Tenant in the payment of any such rent or other sums or charges payable by Tenant

under the Lease or in the performance of any of the covenants, terms, conditions or agreements contained in the Lease, Guarantor will forthwith pay such rent or other sums or charges to Landlord, and any arrears thereof, and will forthwith faithfully perform and fulfill all of such covenants, terms, conditions and agreements, and will forthwith pay to Landlord all damages and all costs and expenses that may arise in consequence of any default by Guarantor hereunder (including, without limitation, all reasonable attorneys' fees incurred by Landlord or caused by any such default and/or by the enforcement of this Guaranty).

This Guaranty is an absolute and unconditional guaranty of payment (and not of collection) and of performance and is a surety agreement. Guarantor's liability hereunder is direct and may be enforced without Landlord being required to resort to any other right, remedy or security and this Guaranty shall be enforceable against Guarantor, without the necessity for any suit or proceedings on Landlord's part of any kind or nature whatsoever against Tenant, and without the necessity of any notice of non-payment, non-performance or non-observance or the continuance of any such default or of any notice of acceptance of this Guaranty or of Landlord's intention to act in reliance hereon or of any other notice or demand to which Guarantor might otherwise be entitled, all of which Guarantor hereby expressly waives; and Guarantor hereby expressly agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in nowise be terminated, affected or impaired by reason of the assertion or the failure to assert by Landlord against Tenant, of any of the rights or remedies reserved to Landlord pursuant to the provisions of the Lease.

This Guaranty shall be a continuing Guaranty, and (whether or not Guarantor shall have notice or knowledge of any of the following) the liability and obligation of Guarantor hereunder shall be absolute and unconditional and shall remain in full force and effect without regard to, and shall not be released, discharged or in any way impaired by, and shall not be subject to any reduction, limitation, termination, defense, offset, counterclaim or recoupment as a result of (a) any amendment or modification of, or supplement to, or extension or renewal of, the Lease or any assignment or transfer thereof; (b) any exercise or non-exercise of any right, power, remedy or privilege under or in respect of the Lease or this Guaranty or any waiver, consent or approval by Landlord with respect to any of the covenants, terms, conditions or agreements contained in the Lease or this Guaranty or any indulgences, forbearances or extensions of time for performance or observance allowed to Tenant or Guarantor from time to time and for any length of time; (c) any increase in, addition to, exchange or release of, or non-perfection of any lien on or security interest in, any collateral or any release or amendment or waiver of or consent to any departure from or failure to enforce any other guarantee, for all or any of the Obligations; (d) any bankruptcy, insolvency, reorganization, arrangement, readjustment, composition, liquidation, dissolution or similar proceeding relating to Tenant, or its properties, or Guarantor including, without limitation, rejection of the Lease or guaranteed Obligations in such bankruptcy; (e) any limitation on the liability or obligation of Tenant under the Lease or its estate in bankruptcy or of any remedy for the enforcement thereof, resulting from the operation of any present or future provision of the federal bankruptcy law; (f) any sublease or transfer by Tenant or any assignment, mortgage or pledge of its interest under the Lease (except to the extent, and only to the extent, otherwise expressly hereinafter provided with respect to an assignment or transfer of the Lease under Section 29(c) thereof which

operates to release and discharge Tenant from its liability under the Lease); (g) any termination of the Lease as a result of Tenant's default thereunder prior to the expiration of its Term; (h) any agreement entered into between the Landlord and an assignee or subtenant of Tenant; (i) any exchange of the Demised Premises for Exchange Property as contemplated by Section 19.4 (or any other provision) of the Lease; or (j) any lack of validity of enforceability of the Lease or any agreement or instrument relating thereto. Notwithstanding the provisions of clause (f) above, in the event that the Lease is assigned or transferred to another entity (the "Transferee") pursuant to the provisions of Section 29(c) of the Lease, Landlord and Mortgagee shall release Guarantor from its obligations under this Guaranty concurrently with such assignment or transfer (a "Transfer") provided that all the conditions set forth in Section 29(c) of the Lease are satisfied and provided further that all of the following conditions precedent are satisfied:

(i) Mortgagee and Landlord shall have received, not less than sixty (60) days prior to the proposed Transfer, audited annual financial statements of Guarantor and Transferee for each of the two (2) fiscal years of Guarantor and Transferee next preceding the proposed Transfer (the "Applicable Fiscal Years"), prepared by a nationally recognized certified public accounting firm in accordance with generally accepted accounting principles consistently applied ("GAAP"), together with all Section 10(k) and 10(q) quarterly and annual filings made by Guarantor and Transferee, if any, with the Securities Exchange Commission with respect to the Applicable Fiscal Years;

(ii) Mortgagee and Landlord shall have received, not less than sixty (60) days prior to the proposed Transfer, a certificate executed by the respective chief financial officers of Guarantor and Transferee demonstrating that each of the Financial Criteria (defined below) for Transferee is equal to or better than each of the corresponding Financial Criteria for Guarantor as of the end of the fiscal year next preceding the proposed Transfer. As used herein, the term "Financial Criteria" means collectively (AA) the Tangible Net Worth and Ratio of Debt to Tangible Net Worth of Guarantor and Transferee determined in accordance with GAAP, and (BB) the rating assigned to one or more classes of outstanding public debt issued by Guarantor and Transferee by Moody's Investors Services, Inc., or Standard & Poor's Corporation, or successor to any of them;

(iii) Mortgagee shall have received written confirmation from the Rating Agencies that the Transfer shall not result in a downgrade, withdrawal or qualification of any kind with respect to any security collateralized by or related to the loan secured by the Mortgage;

(iv) Mortgagee and Landlord shall have received such legal opinions to the effect that the documents creating the Transferee's liability are duly authorized, executed and delivered and are binding and enforceable in accordance with their terms; and

(v) Guarantor reimburses Mortgagee and Landlord for their reasonable legal and out-of-pocket expenses incurred in connection with the Transfer.

In the event Transferee does not satisfy one or more of the requirements and conditions set forth above, Transferee or Guarantor may provide one or more substitute guarantors of the Lease (a "Substitute Guarantor"), whereupon Guarantor shall be released from this Guaranty provided that (a) all the conditions and requirements described above are satisfied with respect to Substitute Guarantor as fully as if it were the Transferee, and (b) the Substitute Guarantor executes, without any cost or expense to Lender, a new guaranty agreement in the form of this Guaranty.

All of Landlord's rights and remedies under the Lease and under this Guaranty are intended to be distinct, separate and cumulative and no such right and remedy therein or herein mentioned is intended to be in exclusion of or a waiver of any of the others. No termination of the Lease or taking or recovering of the premises demised thereby shall deprive Landlord of any of its rights and remedies against Guarantor under this Guaranty. This Guaranty shall apply to the Obligations arising on or before January 31, 2024, and shall be null and void and of no force or effect as to any Obligations thereafter arising.

The Guarantor hereby waives any requirement that the Landlord protect, secure, perfect or insure any security interest or lien or any property subject thereto or exhaust any right to take any action against any person or any collateral (including any rights relating to marshaling of assets).

Guarantor further agrees that, to the extent that the Tenant or the Guarantor makes a payment or payments to the Landlord, which payment or payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to the Tenant or the Guarantor or their respective estate, trustee, receiver or any other party under any bankruptcy law, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, this Guaranty and the advances or part thereof which have been paid, reduced or satisfied by such amount shall be reinstated and continued in full force and effect as of the date such initial payment, reduction or satisfaction occurred.

Guarantor shall have no rights (direct or indirect) of subrogation, contribution, reimbursement, indemnification or other rights of payment or recovery from the Tenant, or any other guarantor of the Tenant's obligations under the Lease, for any payments made by the Guarantor hereunder, and Guarantor hereby waives and releases absolutely and unconditionally, any such rights of subrogation, contribution, reimbursement, indemnification and other rights of recovery which it may now or hereafter acquire.

Guarantor represents and warrants to Landlord that (a) the execution and delivery of this Guaranty has been duly authorized by the Board of Directors of Guarantor and (b) on the date of this Guaranty, Guarantor is the owner, through one or more wholly-owned subsidiaries, of all of the issued and outstanding capital stock of the Tenant, and Guarantor will, directly or indirectly, benefit from the Lease and the transaction which is the subject of the Second Amendment.

This Guaranty shall be legally binding upon Guarantor and its successors and assigns and shall inure to the benefit of Landlord and its successors and assigns. Reference herein to Tenant

shall be deemed to include Tenant and its successors and assigns. The terms and provisions of this Guaranty shall be governed by the laws of the State of Illinois.

Guarantor will not enter into any amendment to this Guaranty, and no such amendment will be effective in any event, without the prior written consent thereto by Landlord and the Mortgagee. Guarantor will from time to time during the Demised Term, promptly following request of Landlord or Mortgagee, confirm in writing to Landlord and to Mortgagee that this Guaranty remains in full force and effect in accordance with its terms and such other matters as may be reasonably requested by Landlord or Guarantor.

All terms used in this Guaranty with their initial letters capitalized which are specially defined in the Lease shall have the same meaning herein as given to such terms in the Lease, unless otherwise defined herein or the context otherwise clearly requires.

IN WITNESS WHEREOF, Guarantor, intending to be legally bound hereby, has caused this Guaranty to be executed by its duly authorized officer on this 5 day of August, 1998.

PROFFITT'S, INC.,<br>
a Tennessee corporation<br><br>
By: _____<br>
Its: _____<br>
VP

D:\WOLVERIN\CARSONPA\LINCOLN\CORPGUAR.1