UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEC 98C-5 LLC,<br><br>　　　　　　Plaintiff,<br>v.<br>SAKS INCORPORATED,<br><br>　　　　　　Defendants. | Case No. 1:20-cv-03970<br><br>Honorable Elaine E. Bucklo |

**DEFENDANT SAKS INCORPORATED'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS THE COMPLAINT**

Defendant Saks Incorporated ("Saks") submits this memorandum of law in support of its Motion to Dismiss the Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

This suit followed the February 2018 bankruptcy of Bon-Ton Stores, Inc. ("Bon-Ton"), which operated department stores doing business as Carson Pirie Scott (or "Carsons"). The bankruptcy was filed three years after the critical events determinative of this action over a former Carsons store (the "Store") located at the Lincoln Mall in Matteson, Illinois (the "Mall"), first leased in 1985. Lincoln Mall closed in 2015 and was demolished between September 2017 and February 2018. Plaintiff WEC 98C-5 ("WEC" or "Plaintiff") was the landlord of a Carsons store in the Mall which continued operating in isolation—without a surrounding shopping center—for a period after the Mall closed. Weeks after filing for bankruptcy protection, Bon-Ton rejected the subject lease in bankruptcy court. The former Store building was demolished and the Village of Matteson took possession of the property where the Store once stood, eliminating all trace of the

former Lincoln Mall as well as the structure on which WEC seeks continued rents. The decisions to demolish the Mall and the Store were not made by Carsons—or Saks. Instead, other entities made those decisions for their own sole benefit.

WEC's Complaint alleges in summary fashion that Saks, as the guarantor of the Carsons lease, is liable for rent and other payments that Bon-Ton failed to make after rejecting the lease in the bankruptcy proceedings. The Complaint is deficient in multiple important respects. Saks moves to dismiss the Complaint on the grounds that (1) the destruction of the mall excused Saks' performance, (2) the taking of the property by the Village of Matteson excused Saks' performance, (3) WEC's declaratory judgment claim does not does not seek guidance on future conduct, (4) WEC lacks standing to bring its claim, and (5) WEC failed to plead mitigation of damages.

## I. STATEMENT OF FACTS

The Complaint alleges that WEC's predecessor-in-interest and the predecessor-in-interest of a Bon-Ton subsidiary (CPS Department Stores, Inc., the "Tenant") entered into a lease, dated October 31, 1985, for the Matteson, Illinois property where the Store operated (the "Lease," Exhibit 1 to the Complaint, amendments at Exhibits 2 and 3). (Complaint ¶ 10.) The Complaint describes the leasehold premises as located at 300 Lincoln Mall Drive, Matteson, Illinois 60443 (the "Property"). (*Id*. ¶ 1.)

The Complaint also alleges that Saks' predecessor-in-interest entered into a performance guaranty dated August 5, 1998 (the "Guaranty," Exhibit 4 to the Complaint), that guaranteed the Tenant's payments and performance under the Lease. (Complaint ¶ 12.) WEC seeks rent allegedly due and owing under the Lease through January 31, 2024, among other damages. (*Id*. ¶ 36.) Notably, the Complaint does not allege that WEC can perform through January 31, 2024, by making the Property available to Saks—or anyone else—for enjoyment of the leasehold. Both the Lease and Guaranty provide that they shall be governed by Illinois law. (Ex. 1 at 51; Ex. 4 at 5.)

2

The Compliant states the Mall closed on January 7, 2015. (*Id*. ¶ 16.) It remained closed through September 2017, when demolition of the Mall began. (*Id*. ¶ 22.) By February 2018, the Mall was fully demolished. (*Id*.) The Store, adjoining the Mall, continued to operate into 2018. (*Id*. ¶¶ 14, 20.)

The bankruptcy docket, of which this Court may take judicial notice, *World Water Works Holdings, Inc. v. Cont'l Cas. Co*., 392 F. Supp. 3d 923, 932 (N.D. Ill. 2019), shows that Bon-Ton filed for bankruptcy protection on February 4, 2018. *In re The Bon-Ton Stores, Inc*., No. 18-10248, Doc. No. 1. On March 6, 2018, the Bankruptcy Court approved the Debtor's rejection of the Debtor's lease for the Store. *Id*., Doc. 387. WEC has known at least since that time that the Debtor would cease to pay rent on the store and that WEC must undertake efforts to re-lease the premises in order to mitigate any losses flowing from the Bon-Ton bankruptcy. WEC alleges it partnered with the Village of Matteson (the "Village") to demolish the building on the Property. (Complaint ¶ 43.) Later, the Village allegedly foreclosed its demotion lien on the Property and took possession of the Property. (*Id*.)

Count I of the Complaint seeks damages based on the alleged breach of the Guaranty, and Count II of the Complaint seeks a declaratory judgment concerning the Guaranty. Saks moves to dismiss both counts for the reasons stated below.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). A claim is facially plausible when it asserts facts that allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a motion to dismiss, the court "will not accept unsupported conclusions, unwarranted inferences, or sweeping legal

3

conclusions cast in the form of factual allegations." *Price v. Minnesota Life Ins. Co.*, No. 06-CV-1040-DRH, 2008 WL 687131, at *2 (S.D. Ill. Mar. 10, 2008) (citing *First Ins. Funding Corp. v. Federal Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002)).

The Court may properly consider on a motion to dismiss any documents that are central to the Complaint. *Serv. By Air, Inc. v. Phoenix Cartage & Air Freight, LLC*, 78 F. Supp. 3d 852, 858 (N.D. Ill. 2015). Here, the Lease and Guaranty are central to the Complaint and were attached to it as Exhibits 1 through 3 and Exhibit 4, respectively.[1] The terms of the Lease and Guaranty govern any conflicting allegations in the Complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) (it is a "well-settled rule that when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations"); *Woodall v. Vill. of Washington Park, Illinois*, No. 02-CV-0597-DRH, 2006 WL 1131906, at *2 (S.D. Ill. Apr. 27, 2006) ("Documents attached to the complaint are part of the pleadings and if those documents do not support the allegations, then a plaintiff can effectively plead itself out of court.").

Under Rule 12(b)(1), "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, unless standing is challenged as a factual matter." *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691 (7th Cir. 2015). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the required elements of standing. *Id*. In order to have standing, a litigant must "prove that [it] has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Id*. at 691-92.

---

[1] A true and complete copy of the Lease, as amended, is attached for the Court's reference as Exhibit A.

4

## III. ARGUMENT

**A. The Destruction of the Mall Excuses Saks' Performance.**

According to the Complaint, Lincoln Mall was demolished between September 2017 and February 2018, prior to Carsons' alleged default and Bon-Ton's rejection of the Lease. (Complaint ¶¶ 22, 30-31.) The destruction of the Mall excused the Tenant's performance under the Lease and, because the Guaranty agreement defines Saks as a surety, the same arguments apply to excuse Saks from the obligations under the Guaranty that WEC seeks to enforce.[2]

First, "the doctrine of legal impossibility, or impossible performance, excuses performance of a contract, only when performance is rendered objectively impossible either because the subject matter is destroyed or by operation of law." *Innovative Modular Sols. v. Hazel Crest Sch. Dist. 152.5*, 2012 IL 112052, ¶ 37, 965 N.E.2d 414, 421, as modified on denial of reh'g (Mar. 26, 2012). Here, the subject matter of the contract is defined as "department store facilities" in the "Lincoln Mall" Shopping Center; the Lease expressly contemplates not just a free-standing department store but a department store operating in a shopping mall. (Ex. 1 at 1, 18 (providing in Section 11.1 that the Tenant will operate "department store facilities on the Demised Premises," which are defined in Section 1(b) as including easements, rights of way, and other portions of the Mall).) In fact the "Demised Premises" are described in Section 1(b) as the "Lincoln Mall." (*Id*. at 2.) In addition, the Mall's Operating Agreement, which is effectively incorporated in Section 11.3 of Lease (*id*. at

---

[2] The Guaranty provides that Saks "does hereby become a surety to the Landlord for and with respect to all Obligations [of the Tenant under the Lease]." (Ex. 4 at 1.) The Guaranty states flatly that it "is a surety agreement." (*Id*. at 2.) Under Illinois law, the liability of a surety "is measured by the liability of its principal." *Village of Rosemont v. Lentin Lumber Co*., 144 Ill. App. 3d 651, 668 (1st Dist. 1986). "The rights and defenses of the principal belong to the surety by virtue of the relationships created by the surety contract." *Id*.; *accord*, *United City of Yorkville v. Fidelity and Deposit Company of Maryland*, 2019 IL App (2d) 180230, ¶ 138.

19), recites that Carson Pirie Scott desires "to construct and operate *as part of the Center* a department store facility . . . ." (Exhibit B hereto at 2 (emphasis added)).[3] In addition, with the Mall destroyed, WEC could no longer perform its end of the bargain to provide its tenant with Property in the Mall. Without a shopping center around it, the subject matter of the contract to lease the Property in the Mall was destroyed, which excused Saks' guaranty of lease payments on the Property on the ground of legal impossibility.[4]

Second, Saks' performance is also excused under the similar doctrine of frustration of purpose. Under Illinois law, when parties enter into a contract where "[by] the nature of the contract and the surrounding circumstances[,] the parties . . . must have known that it could not be performed unless some particular condition or state of things would continue to exist . . . the contract . . . must be construed as subject to an implied condition that the parties shall be excused in case performance becomes impossible from such condition or state of things ceasing to exist." *Leonard v. Autocar Sales & Service Co.*, 392 Ill. 2d 182, 187-88 (1945); *accord*, *Greenlee Foundries, Inc. v. Kussel*, 13 Ill. App. 3d 611, 616 (1st Dist. 1973). Here the object and nature of the contract—operation of a department store in a mall—together with all of the surrounding circumstances make it clear that the parties contemplated the department store would exist in a

---

[3] The Court may consider documents referenced in the Complaint. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). For purposes of a Rule 12(b)(6) motion, the Complaint includes attachments, which for this Complaint includes the Lease. *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988).

[4] WEC likely will take the position that, because Carsons remained in the Property after demolition of the Mall, Saks cannot argue that demolition of the Mall excused *Saks'* performance on the Guaranty. But Carsons' voluntary occupancy in the Property after demolition of the Mall does not alter Saks' contractual obligations under the Guaranty: "Guarantor, intending to be legally bound, hereby guarantees to Landlord the full and prompt payment when due of all Basic Rent, additional rent and any and all other sums and charges payable by Tenant *under the Lease*." (Ex. 4 at 1 (emphasis added).) Saks is bound by the Lease contract and not by voluntary extracontractual actions of the tenant. Had WEC sought additional surety from Saks after the Mall was demolished, WEC could have asked for it yet WEC chose not to do so.

mall and did not contemplate continued performance if the Mall was destroyed. Carsons' performance was therefore excused when the Mall ceased to exist.

Third, the demolition of the Mall resulted in the constructive eviction of Carsons from the Property, thereby excusing the Tenant's further performance under the Lease. "Constructive eviction is something of a serious and substantial character done by the landlord with the intention of depriving the tenant of the enjoyment of the premises." *Shaker & Assocs., Inc. v. Med. Techs. Grp.*, Ltd., 315 Ill. App. 3d 126, 134, 733 N.E.2d 865, 872 (1st Dist. 2000). Here, destruction of the Mall deprived Carsons of enjoyment of the Property in the Mall. If Carsons elected to stay after demolition, its decision to do so was outside of the Tenant's obligations under the Lease and beyond the subject of Saks' guaranty of rent payments *under the Lease.*

Fourth, the demolition of the mall deprived the Tenant possession of a portion of the Demised Premises as defined in the Lease. Failure to allow Tenant possession of the Demised Premises constituted a breach of the Lease and was a ground for excusing the Tenant's performance. The Lease defines the leased property as the "Demised Premises" or "Lincoln Mall." (Ex. 1 at 1-2.) The Demised Premises include the department store building, the land on which it is situated, and "all rights-of-way or uses, privileges, franchises, servitudes, licenses, easements, tenements, hereditaments and appurtenances now or hereafter belonging or appertaining to any of the foregoing, including those with respect to the lands adjacent to the lands referred to in paragraph (a) above . . . ." (*Id*. at 1.) The Demised Premises therefore include Tenant's substantial rights in the Mall itself, and the termination of those rights was a breach. Under the Guaranty, Saks is entitled to exercise all of Tenant's defenses and WEC's failure to provide the Tenant with the Demised Premises excused Saks' performance. For the same reason, when the Property was demolished, WEC lost the ability to deliver possession of the Demised Premises, which also

excused Saks' obligation to make rent payments for occupancy of the Property.

For those reasons, the allegations of the Complaint, read in combination with the contents of the Exhibits to the Complaint, are not sufficient to state a claim for breach of contract against Saks.

**B.       The Taking of the Property Terminated the Lease.**

WEC fails to state a claim for any rent that did not accrue prior to the date of the Village's taking of the Property. Although WEC does not say when the taking took place, it alleges the Village "foreclosed its demolition lien on the Property and took possession of the Property." (Complaint ¶ 43.) According to the terms of the initial Lease, a "taking" is defined as "a transfer during the term hereof of all or any part of the Demised Premises or any interest therein or right accruing thereto, as a result of . . . the exercise of the right of appropriation, confiscation, condemnation, or eminent domain . . . affecting the Demised Premises or any part thereof." (Ex. 1 at 6.) The Village's taking constitutes a "taking" under the Lease.

Importantly, the Lease provides that such takings act to terminate the Lease. According to the paragraph titled "Total Taking" the Lease would "terminate on the date on which title to so much of the Demised Premises as are subject to the Total Taking vests in the condemning authority." (*Id*. at 27.)[5] The Village's taking of the Property automatically triggered the termination clause on Page 27, pursuant to its own terms. Where, as here, a clause contains specific language calling for the termination of the contract, Illinois law allows such clauses to automatically terminate the contract without further action. *Okey, Inc. v. Am. Nat. Bank & Tr. Co. Under Tr. Dated Nov. 30, 1964, Known as Tr. No. 20912*, 96 Ill. App. 3d 987, 991 (1st Dist. 1981) ("By its

---

[5]  The relevant language in the Lease appears in Section 19 of the Lease. Portions of that Section are not legible in the copy attached to the Complaint but are clear in the copy attached as Exhibit A for the Court's convenience.

terms, a lease can terminate on the occurrence of a collateral event, without further action by the parties, but the lease must contain an express condition to have this effect.").

Upon the termination, the Lease provides that the Tenant would be liable for rent only up "to the date of such termination." (Ex. 1 at 27.) And, under the terms of the Guaranty, the Guarantor only agreed to pay "any such rent or other sums or charges" payable "under the Lease." (Ex. 4 at 1-2.) Because no rent would accrue under the Lease after the taking of the Property, no rent is due under the Guaranty for the post-taking period either. Therefore, to the extent the Complaint seeks damages under the Guaranty based on rent accruing after the taking, the Complaint should be dismissed.

**C.   The Claim for Declaratory Judgment Should Be Dismissed.**

WEC fails to state a claim for declaratory relief because the Complaint does not support the notion that WEC is seeking guidance as to future conduct. "The purpose of the declaratory judgment action is to give guidance for future conduct, not to provide relief related to past conduct." *Babbitt Municipalities, Inc. v. Health Care Service Corp.*, 2016 IL App (1st) 152662, ¶ 41, 408 Ill. Dec. 93, 64 N.E.3d 1178. The Court should "dismiss a declaratory-judgment action . . . where no future conduct is left to be guided by the court and the declaration would simply be a declaration of liability on past conduct." *Regency Commercial Assocs., LLC v. Lopax, Inc.*, 373 Ill. App. 3d 270, 284, 869 N.E.2d 310, 323 (4th Dist. 2007).

Here, WEC is focused on the past, seeking a declaratory judgment stating that Saks "*violated* the Guaranty." (Complaint ¶ 53 (emphasis added).) Indeed, WEC alleges that Saks' *past* conduct constituted a breach of the Guaranty, not that some future action would constitute a breach. (*See id*. ¶¶ 47-50). This is not appropriate for declaratory judgment. *Adkins Energy, LLC v. Delta-T Corp.*, 347 Ill. App. 3d 373, 380, 806 N.E.2d 1273, 1279 (2d Dist. 2004) ("[D]eclaratory

9

judgment is improper for seeking a determination whether past conduct constituted a breach of contract."); *cf. Regency Commercial Assocs.,* LLC, 373 Ill. App. 3d at 284 (allowing declaratory action to move forward where guidance was sought as to future conduct described in an agreement to commence a lease). The fact that the Lincoln Mall has been demolished and that WEC is no longer the owner of the subject Property puts a fine point on WEC's interest in determining liability for Saks' past conduct, not in resolving any uncertainty about its future. Declaratory relief is just not relevant in these circumstances and Count II should be dismissed.

**D.      Plaintiff Lacks Standing To Recover Damages.**

WEC elected to bring this dispute in federal court and therefore bears the burden of establishing that it has Article III standing to do so. *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 620-21 (7th Cir. 2020), as amended on denial of reh'g and reh'g en banc (June 30, 2020). For standing to exist, three requirements must be satisfied: (1) WEC must have suffered an actual or imminent, concrete and particularized injury-in-fact; (2) there must be a causal connection between its injury and the conduct complained of; and (3) there must be a likelihood that this injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, WEC has not established that it suffered an actual, concrete, and particularized injury.

As described above, the Village took possession of the Property on some undefined date. Once the Village took possession of the Property, WEC lost the right to recover rent, meaning WEC was not injured by any alleged failure by Carsons to pay rent or by Saks to make rent payments as Carsons' guarantor during the same time period. It is well established under Illinois law that if the landlord conveys property, without specifically reserving rights, it "also conveys the leases for the property, as well as the right to receive unaccrued rent." *1002 E. 87th St. LLC v. Midway Broad. Corp.*, 2018 IL App (1st) 171691, ¶ 17; *Bellows v. Ziv*, 38 Ill. App. 2d 342, 350

10

(Ill. App. Ct. 1962) ("Under the foregoing well-settled principles a deed . . . conveying the land upon which the lease was given would convey the lease and the right to receive unaccrued rentals."). The original landlord only retains the right to recover past due rent. *1002 E. 87th St. LLC*, 2018 IL App (1st) 171691, ¶ 17; *see also* 15 Ill. Prac., Real Estate § 13:19 (3d ed.).

Where the plaintiff has no right to recover rent—due to a conveyance of the property—it has suffered no injury and also lacks standing to sue. *See 1002 E. 87th St. LLC*, 2018 IL App (1st) 171691, ¶¶ 18, 25 (holding new landlord lacked standing to sue for rent accrued before it acquired the property through a warranty deed); *cf. A.M. Realty W. L.L.C. v. MSMC REALTY, L.L.C.*, 2012 IL App (1st) 121183, ¶ 43 (holding pre-sale landlord had standing to sue for debt that accrued before the sale of the property); *cf. Pros Corp. Mgmt. Servs., Inc. v. Ashley S. Rose, Ltd.*, 228 Ill. App. 3d 573, 581 (2d Dist. 1992) (holding grantee of property by conveyance had standing to sue for rents unaccrued at the time of the conveyance); *see also Bryant v. Compass Grp. USA, Inc.*, 958 F.3d at 622 (holding "standing requirements in Illinois courts are more lenient than those imposed by Article III" meaning the burden of establishing sufficient injury for Article III standing is higher).

WEC gave up possession of the Property to the Village, and has not pled that WEC reserved any rights to the Lease or any rights to unaccrued rent. Accordingly, WEC lacks standing to sue for any rent that accrued after the conveyance of the Property. WEC's failure to allege the specific date of the taking only emphasizes that it has not met its burden of establishing its standing to bring this action or that the amount in controversy exceeds the jurisdictional threshold. Without that information, WEC's injury is undefined and is certainly not "concrete" or "particularized" as required to invoke federal jurisdiction. Without jurisdiction, the Complaint should be dismissed.

**E.     The Complaint Should Be Dismissed for Failure To Plead Mitigation of Damages.**

<u>*i.     The Duty To Mitigate Generally and a Landlord's Statutory Duty To Mitigate*</u>

Under Illinois law, an injured person has a duty to make reasonable efforts to minimize damages, *David J. Ross Co. v. Blumberg*, 331 Ill. App. 22 (1st Dist. 1947), and cannot recover for losses that might have been prevented by reasonable efforts. *Murphy v. Friel*, 328 Ill. App. 586 (1st Dist. 1946). Section 9-213.1 of the Illinois Code of Civil Procedure specifically requires landlords to "take reasonable measures to mitigate the damages recoverable against a defaulting lessee." 735 ILCS 5/9-213.1. This duty extends to the guarantor of a lease. *See*, *e.g.*, *Danada Square, LLC v. KFC Nat. Mgmt. Co.*, 392 Ill. App. 3d 598 (2d Dist. 2009) (applying the statutory duty to mitigation damages to a claim to recover rent from a guarantor). Even if Illinois courts did not enforce the statute as against other guarantors, Saks would still be protected by the statute as Carsons' surety. As explained above, the Tenant's "rights and defenses" belong to Saks as the surety, including the statutory right to mitigation of damages. *See Village of Rosemont*, 144 Ill. App. 3d at 668.

The complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *United States Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892, 897 (N.D. Ill. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 127 S.Ct. 1955 (2007)). WEC has not pleaded *any* facts indicating directly or otherwise inferring that it took steps to meet its statutory duty to mitigate its damages. Those are facts "necessary to sustain recovery" here.

<u>*ii.     The Landlord's Burden To Establish Mitigation*</u>

WEC's pleading obligation is consistent with its burden of proof at trial. Illinois courts consistently hold that "the burden of establishing mitigation of damages should be shouldered by

12

the landlord." *Snyder v. Ambrose*, 266 Ill. App. 3d 163, 166 (2d Dist. 1994); *see also Danada Square LLC*, 392 Ill. App. 3d at 608; *St. George Chicago, Inc. v. George J. Murges & Assocs.*, 296 Ill. App. 3d 285, 293 (1st Dist. 1998). This requirement is based on the settled evidentiary principle that a party in sole possession of information concerning a disputed issue of fact must come forward with that information in order to prevail. *See Snyder*, 266 Ill. App. 3d at 166. In the case of a breached lease, the landlord "occupies the best position to prove compliance with his duty to mitigate damages." *Id.* at 166-67.

        iii.    <u>The Landlord's Obligation To Mitigate in a Commercial Setting</u>

When the tenant ceases to pay rent on the lease of a commercial building, the landlord's statutory duty is to "take reasonable measures to mitigate" damages—a duty that requires the landlord to undertake specific actions designed to replace the lost payments and to do so quickly. For example, in *MXL Industries, Inc. v. Mulder*, 252 Ill. App. 3d 18, 31-32 (2d Dist. 1993), the landlord adequately mitigated its damages because, as soon as the tenant vacated the premises, the landlord engaged a building manager, erected signage on the vacated building, placed calls to bankers, real estate brokers, and developers, and ran newspaper advertisements in local and regional newspapers. In contrast, the landlord in *Kallman v. Radioshack Corp.*, 315 F.3d 731, 740-42 (7th Cir. 2002), failed to mitigate her damages because she delayed retaining a real estate broker for several months, delayed making improvements to the property and insisted that the costs of improvements be negotiated as terms of a new lease, and bargained for rental rates higher than the previous tenant had paid for the unimproved property.

Although *MXL* and *Kallman* involved judgments based on facts proven at trial, they and cases like them remain instructive at the pleading stage of a case. The cases are emphatic that a landlord like WEC will have the burden of proving that it carried out its statutory duty to mitigate

13

damages, and it will have to do so with evidence of specific actions taken. If WEC does not carry that burden, *i.e.*, if it does not prove it took reasonable actions which would have mitigated its damages, then it is not cannot recover those damages from Saks. Under federal pleading rules, a defendant is entitled to notice of the claims against which it must defend and to have them set out in the complaint. *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 851 (7th Cir. 2015) (plaintiff "was required to plead sufficient facts to put [defendant] on notice of his claim"). Because WEC does not describe any efforts to mitigate in its Complaint, the Complaint is deficient on its face in advising Saks of WEC's mitigation efforts and should be dismissed.

In a case brought by another landlord seeking to enforce a virtually identical Saks guaranty of a Bon-Ton lease, the Circuit Court for the Eighteenth Judicial Circuit of Illinois recently granted Saks' motion to dismiss the landlord's complaint for failure to plead mitigation of damages. (*See* Motion to Dismiss and Order dated March 18, 2019 in *C.R. Center, L.P. v. Saks Incorporated*, Case No. 2018-MR-001624, attached hereto as Exhibits C and D). Like the plaintiff in *C.R. Center*, WEC has not pleaded the element of mitigation which WEC must show in order to state a claim for relief. The element of mitigation is "necessary to sustain recovery" here, and the Court should therefore dismiss WEC's Complaint for its failure to state a claim on which relief could be granted.

## IV. CONCLUSION

For the foregoing reasons, Saks Incorporated respectfully requests that this Court dismiss Plaintiff's claims against it, with prejudice, for failure to state a claim upon which relief could be granted.

Dated: September 11, 2020

Respectfully submitted,

*/s/* Michael Dockterman
Michael Dockterman
(Illinois Bar No. 3121675)
William R. Andrichik
(Illinois Bar No. 6302306)
Gregory Berman
(Illinois Bar No. 6320298)
Steptoe & Johnson LLP
227 W. Monroe St., Suite 4700
Chicago, IL 60606
Phone: (312) 577-1300
mdockterman@steptoe.com
wandrichik@steptoe.com
gberman@steptoe.com

*Attorneys for Defendant Saks Incorporated*

**CERTIFICATE OF SERVICE**

I, Michael Dockterman, an attorney, hereby certify that on September 11, 2020, I caused a true and correct copy of the foregoing **DEFENDANT SAKS INCORPORATED'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT** to be electronically filed with the Clerk of Court using CM/ECF, which will serve all counsel of record.

/s/ Michael Dockterman

Michael Dockterman
Steptoe & Johnson LLP